SCIENTIFIC APPLICATION, INC., an
Iowa Corporation, Plaintiff, Appellant,
and Cross-Appellee,

v.

Darryl DELKAMP, Individually and d/b/a
Capitol Homefoamers, Inc., Defendant,
Appellee, and Cross-Appellant.

Civ. No. 9833.

Supreme Court of North Dakota.

Feb. 24, 1981.

Ramlo, Anderson & Associates, Fargo, for plaintiff, appellant, and cross-appellee; argued by Wayne T. Anderson, Fargo.

Wheeler, Wolf, Wefald, Peterson & McDonald, Bismarck, for defendant, appellee, and cross-appellant; argued by David L. Peterson, Bismarck.

ERICKSTAD, Chief Justice.

The appellant, Scientific Application, Inc. (Scientific), appeals from a denial of its motion for new trial by the trial court after an adverse jury verdict was rendered in the district court of Burleigh County. The appellee, Darryl Delkamp, doing business as Capitol Homefoamers, Inc. (Delkamp), cross-appeals from the trial court's order of a remittitur from the jury verdict.

Delkamp became a dealer of a catalytic coating product produced by Scientific called Spraylock. Spraylock is produced when a resin held in one tank of an applicating machine is mixed in the head of a spray gun with a catalyst from another tank. The resin and catalyst are pumped to the head under pressure through hoses. The resulting spray was recommended as a sealer for surfaces made of metal, concrete, or wood.

Both parties testified that the application of the product and operation of the machine required technical knowledge and care in cleaning the surfaces to which Spraylock was to be applied. After attending a demonstration, Delkamp decided to become a dealer. He received instruction on how to use and apply Spraylock during the spring of 1978. Delkamp also received a contract containing limitations of warranties from Scientific which he did not sign or return.[1]

---

1. "9. *Warranty.* Unless otherwise provided herein, Scientific warrants title and that all goods sold hereunder shall conform to Scientific's standard specifications. Subject to the preceding sentence and except as otherwise expressly stated herein, SCIENTIFIC MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY, FITNESS FOR PARTICULAR PURPOSE, OR ANY OTHER MATTER WITH RESPECT TO THE GOODS, whether used alone or in combination with other substances. Scientific shall not be liable for, and Dealer assumes responsibility for, all

After becoming a dealer, Delkamp entered into seven contracts for the application of Spraylock during 1978. The first contract involved a swimming pool in Jamestown. Delkamp testified that the product and machinery worked relatively well and that he was paid for the project. He was not, however, able to cover as many square feet per day as he had been told he would be able to do. He had been told, and literature stated, he should be able to do 6,000 square feet per day.

Delkamp then contracted with Andy Gimbel to Spraylock a roof for $6,000. He testified that the spray gun would plug continuously due to a foreign substance in the resin. A representative was sent out by Scientific who confirmed that the resin was contaminated and the resin was replaced by Scientific. In addition, the pump on the applicating machine did not have sufficient power to pump the material to the peak of the 18-foot roof. A larger pump was then ordered. The Gimbel job has never been satisfactorily completed and Delkamp has not been paid for it.

The Doll milkhouse was Delkamp's next contract for $1,930. The milkhouse related to old construction. Delkamp testified that he sandblasted and repaired the milkhouse before applying Spraylock. Subsequently the Spraylock peeled and, consequently, Delkamp has not been paid for the job.

Delkamp's next contract involved new construction. He completed that contract and was paid in full. Delkamp testified, however, that he did have problems with the machine and that it took 35 days to do 8,000 square feet.

The last job Delkamp worked on was the application of Spraylock to machinery at Jamestown for $4,635 for Peavey Elevator. Delkamp testified he was still having problems with "chunky material" and with the applicating machine itself. Additionally, as the temperature fell to around 40°, the material became extremely thick and could not be pumped through the hoses. Testi-

mony was submitted by Scientific that the recommended temperature for application was 65°. The Peavey contract was not completed and Delkamp has not been paid for it.

Delkamp executed one more contract for the application of Spraylock for $3,892 on October 30, 1978, with August Pfeifer. Because of the previous problems, however, Delkamp did not attempt to fulfill this contract.

Delkamp refused to pay for some of the material associated with Spraylock and also refused to pay for some foam insulation material supplied by Scientific, which he testified was satisfactorily used in his related business of home insulation. Scientific sued Delkamp on this unpaid account for $20,855.60 plus interest. Delkamp counterclaimed for damages, loss of contract profits, and expenses related to promoting Spraylock in the amount of $85,402. The jury returned a verdict for Delkamp in the amount of $105,835 and for Scientific in the amount of $4,950. The trial court agreed with the jury's verdict, but determined that the award to Delkamp was not supported by the evidence and ordered a reduction in the verdict to $64,275.64 for Delkamp. Scientific now appeals from the order denying its motion for a new trial on the basis of the following issues:

Were the jury's findings that warranties were given by Scientific and breached by Scientific supported by the evidence when Delkamp had notice of limitations of warranties?

Were the jury's findings as to damages and the reduction of damages ordered by Judge Hodny supported by the evidence with requisite certainty?

Is Delkamp entitled to recover damages for lost profits, direct expenses, and marketing expenses when the evidence indicates reasonable mitigation could have reduced such damages?

personal injury and property damage resulting from the handling, possession or use of the

products by Dealer."

Was the introduction of Exhibit G, (an internal memo), testimony regarding Scientific's withdrawal of "Spraylock" from the market and testimony of Scientific's dealings with other nonparty "Spraylock" dealers irrelevant and so prejudicial that failure to exclude said evidence was prejudicial error?

Delkamp cross-appeals from the amount of remittitur ordered by the trial court. We affirm the trial court's denial of the motion for new trial and the order of remittitur.

## I. SCOPE OF REVIEW

A motion for new trial based upon insufficiency of the evidence is addressed to the trial court's discretion. *Chicago, M., St. P. & P. RR. Co. v. Johnston's Fuel Liners,* 130 N.W.2d 154, 157 (N.D.1964). In *Wall v. Penn. Life Ins. Co.,* 274 N.W.2d 208 (N.D. 1979), we said:

"As we have stated before, a motion for a new trial based upon sufficiency of the evidence 'is addressed to the sound discretion of the trial court, and the trial court's action in granting such a motion will not be disturbed on appeal unless a manifest abuse of discretion is shown.' [Citations omitted.] A trial court abuses its discretion when it acts in an arbitrary, unreasonable or unconscionable manner. [Citation omitted.] A new trial may not be granted if the trial court merely disagrees with the jury's verdict when the evidence is nearly balanced or where different minds could reach different conclusions. In order to set aside a jury verdict and grant a new trial, the trial court must find the verdict to be manifestly against the weight of the evidence. [Citations omitted.]" 274 N.W.2d at 218–19.

We review the evidence in the light most favorable to the verdict. *Chicago, M., St. P. & P. RR. Co. v. Johnston's Fuel Liners, supra,* 130 N.W.2d at 158.

We will review the evidence in the light most favorable to the verdict on each of the issues Scientific has raised to determine whether or not the trial court abused its discretion by denying Scientific's motion for a new trial.

## II. EXCLUSION OF WARRANTIES

At trial, Delkamp argued that Scientific had breached implied warranties of merchantability and fitness for a particular purpose and an express warranty that he would be able to cover 6,000 square feet per day. Scientific contends that Delkamp cannot recover on the basis of breach of warranty as he had notice of the limitations of warranty found in the dealer's contract he received from Scientific even though he did not sign it. See footnote 1.

■ Sections 41–02–30, 41–02–31, and 41–02–32, N.D.C.C., set out the requirements of an express warranty, and implied warranties of merchantability and fitness for a particular purpose. The question whether or not an express warranty is given is a question of fact for the jury. *Autzen v. John C. Taylor Lumber Sales, Inc.,* 280 Or. 783, 572 P.2d 1322, 1326 (1977). An implied warranty of merchantability is deemed to have been given unless excluded or modified. § 41–02–31, N.D.C.C. Whether or not such a warranty is excluded or modified is a question of fact for the jury. *Knipp v. Weinbaum,* 351 So.2d 1081 (Fla. 3d D.C.A. 1977). Whether or not an implied warranty of fitness for a particular purpose is given is also a question of fact for the jury. *Singer Co. v. E.I. DuPont deNemours & Co.,* 579 F.2d 433, 439 (8th Cir. 1978).

■ While all warranties may properly be excluded,[2] such exclusion must be part of the basis of the bargain between the parties. *Knipp v. Weinbaum, supra,* 351 So.2d at 1085. We agree with what the Court of Appeals of Washington said in *DeCoria v. Red's Trailer Mart, Inc.,* 5 Wash.App. 892, 491 P.2d 241 (1972):

"Disclaimers of warranty are disfavored in the law and are ineffectual unless explicitly negotiated between buyer and seller and set forth with particularity

**2.** *See* § 41–02–33, N.D.C.C. (U.C.C. 2–316) Exclusion or modification of warranties.

showing the particular qualities and characteristics of fitness which are being waived." 491 P.2d at 244.

Mere notice of limitations of warranty which are not incorporated into the contract and therefore not a basis of the bargain is insufficient to prevent a buyer from seeking recovery for breach of warranty. *Rehurek v. Chrysler Credit Corp.*, 262 So.2d 452, 455 (Fla. 2d D.C.A. 1972).

In this case, Delkamp did not sign the dealer contract containing the limitations of warranty. The only "contract" was one prepared, signed, and sent to Scientific by Delkamp granting him an exclusive dealership area. There was no evidence that any limitation of warranty was the basis of the bargain. As mere notice in an unsigned dealer contract is insufficient to limit either express or implied warranties, and there was no other evidence concerning limitations of warranty, Delkamp was not precluded from claiming under a breach of warranty.

The questions whether or not the Spraylock was defective and whether or not Delkamp misused the product were questions of fact for the jury. *Richelman v. Kewanee Machinery & Conveyor Co.*, 59 Ill.App.3d 578, 16 Ill.Dec. 778, 375 N.E.2d 885, 889 (1978); *Times Mirror Co. v. Sisk*, 122 Ariz. 174, 593 P.2d 924, 929 (Ct.App. 1979).

Delkamp testified he had problems with lumps in the resin, insufficient pump power, the Spraylock peeled, the tires fell off the machine, and he could not cover the number of square feet he had been told he would be able to do. The problems with the machine and inconsistency of the Spraylock were corroborated by testimony of another Spraylock dealer. There was also extensive testimony by Delkamp as to his preparation of surfaces and use of the Spraylock. Scientific alleged that the problems were caused by misuse of the product. This was a question of fact for the jury. There is substantial evidence to support the jury's determination that the defects in the product breached the warranties given by Scientific and that Delkamp did not misuse the product. In a case involving the sufficiency of the evidence, a jury's determination will be upheld if there is substantial evidence to support it. *See Grzadzielewski v. Walsh County Mut. Ins. Co.*, 297 N.W.2d 780, 785 (N.D.1980).

## III. ADMITTING INTO EVIDENCE A STATEMENT MADE BY SCIENTIFIC'S AGENT

Scientific contends that the trial court erred when it admitted a memo written by one of Scientific's employees to another employee.[3] Scientific objected to the memo,

3. "January 30, 1979
"MEMO
"TO: Gary Lappe
"FROM: Jim Young
"Per your request, I am expressing my views and recommendations regarding our Spray Lock dealers and what S.A.I. should do.
"S.A.I. has always warrantied all equipment and products, therefore if we refuse to compensate these dealers it will be a gross mistake. The Spray Lock division made many claims as to the performance of the material and equipment. The material did not perform as advertised. It developed globs and clogged in oriface causing down time for clean-up every 5 to 15 minutes. It peeled, cracked, chipped and did not prevent moisture penetration. The equipment was not adequate. The tires went flat, bearings burned out and had to be replaced, pumps were to small and had to be replaced, all at additional cost to the dealer.

"Not one of my four dealers had success with any job. Dealers completed jobs and have not been able to collect because material did not perform. I do not feel the Spray Lock division adequately trained dealers in technique.
"I have lost repore with these dealers, consequently it has effected resin, cellulose and other product sales. Three of these dealers owe S.A.I. money, one has a Class Action Suit against S.A.I., two are considering the same and we have taken back equipment from one and credited his account against what he owes S.A.I. Two of these dealers will barely speak to me now and I am afraid the other two will do the same.
"I feel I have lost 100 sets per month and could lose another 25 to 40.
"Dealers involved:
"1. *Capitol Homefoamers, Bismarck, ND*
Class Action Suit against S.A.I. in the amount of $75,000.00. Actual losses $35—

marked as defendant's exhibit G, on the basis that it was hearsay evidence and was prejudicial.

The trial court at first refused to admit the memo into evidence. Subsequently, it determined that it was admissible under Rule 801(d)(2)(iv) of the North Dakota Rules of Evidence which is as follows:

"(d) *Statements which are not hearsay.* A statement is not hearsay if:

(2) *Admission by party-opponent.* The statement is offered against a party and is . . . (iv) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship,"

Scientific, in answer to requests for admissions, admitted as true that both Jim Young, the writer of the memo, and Gary Lappe, the addressee of the memo, were employees of Scientific at the time the memo was written. Scientific also admitted having the original of the memo in its files.

■ We agree with the trial court's decision to admit the memo under Rule 801(d)(2)(iv), N.D.R.Ev. The memo was written by an agent or servant of Scientific, it concerned a matter within the scope of his employment, and it was made during the existence of that relationship. Rule 801(d)(2)(iv) states that such a statement is not hearsay. *See Kaiser Aluminum & Chemical v. Ill. Cent. Gulf R. Co.*, 615 F.2d 470 (8th Cir. 1980).

In *Kaiser Aluminum,* an employee of the defendant carrier wrote a letter to the plaintiff indicating that it was highly likely that the contamination of an ore shipment originated in one or more of the carrier's railcars. The court determined that the letter fell under Rule 801(d)(2)(D) of the Federal Rules of Evidence which is similar to Rule 801(d)(2)(iv), N.D.R.Ev. *Id.* 615 F.2d at 476.

Scientific also claims that even if the memo were admissible, it should have been excluded pursuant to Rule 403 of the North Dakota Rules of Evidence because its probative value was essentially outweighed by the danger of unfair prejudice. We do not agree. The memo is relevant to the issues involved. Scientific had an opportunity to explain it. While the memo is damaging, it is not the type of evidence to be excluded under Rule 403.

Scientific also asserts that the memo is a self-serving statement by Young to explain falling sales in his sales area. Declarations are admissible even though they are self-serving. *Starr v. Morsette,* 236 N.W.2d 183, 187–88 (N.D.1975). Scientific could have introduced evidence concerning the reliability of the memo. We agree with the trial court that the memo was properly admissible.

Scientific also asserts that the trial court erred by allowing evidence to be admitted concerning the fact that Spraylock was, to a great extent, removed from the market after the present action was initiated. No objection, however, was made when Mr.

$40,000 in jobs completed and unable to collect, not to mention advertising, promotion, time and labor. Will not speak to me. Lost potential resin sales 40 sets per month. Unable to advertise insulation sales or purchase anything from S.A.I. They owe S.A.I. $23,000.00.
"2. *J & J Insulation, Bemidji, MN*
  S.A.I. credited account and took back equipment. They will not speak to me. Lost resin sales, 40 sets per month. Losses $15,000.00.
"3. *Wooldridge Insulation, St. Charles, MN*
  Considering Class Action Suit against S.A.I. Cannot purchase resin or cellulose as they owe S.A.I. $9,000.00 and will not pay until we settle Spray Lock question. Lost resin sales of 25 sets per month & one load of cellulose per month. Losses $20,000.00.
"4. *Midwest Home Improvement Company, Pipestone, MN*
  Considering Class Action Suit. Discouraged from promoting insulation sales. Uses 25 to 40 sets of resin per month. Losses $10,000.00.
"I recommend that S.A.I. take back all equipment and all material on hand at actual cost and credit dealers account.
"Hoping this meets with your approval.
      Jim Young
      Divisional Manager
      Minneapolis, MN"
[Notwithstanding the errors in spelling and grammar in this memo, its meaning is clear.]

Donat, a Minnesota Spraylock dealer, testified that he quit the Spraylock business and was refunded his money. Scientific's attorney did object to the following question directed to Jim McCormick, Scientific's plant manager, by Delkamp's attorney:

"Q. How many dealers are in the business? Well, the only question I want to know is: are you currently manufacturing and processing and selling this product that Mr. Delkamp was buying back in '78?

"A. Yes, sir.

"MR. ANDERSON [Scientific's attorney]: Objection. Irrelevant.

"THE COURT: Overruled."

No further objection was entered by Scientific's attorney. On redirect examination, Scientific's attorney questioned McCormick as to application of Spraylock to buildings in Mount Pleasant, Scientific's headquarters, and as to problems in connection therewith. Delkamp's attorney objected on relevancy grounds and Scientific's attorney answered: "It has the same relevancy as to his [Delkamp's] other dealers and the problems they may have experienced." Subsequently, Delkamp's attorney directed the following question to McCormick on recross examination:

"Q. [Mr. Peterson continuing] You do not market it as Spraylock anymore; do you?

"A. We still manufacture Spraylock.

"Q. Mr. McCormick, would you, please, answer my question. Listen to the question and then answer it. You do not market a product called Spraylock anymore; do you?

"A. No.

"Q. When did you quit marketing it as Spraylock?

"A. In approximately January of '79.

"Q. And isn't it a fact that one of the reasons you quit marketing it as Spraylock is that you were having significant problems with its application wherever it was being applied?

"A. I am not sure what all went into that decision.

"Q. That's one of them; isn't it?

"A. I am not sure."

No objection was made by Scientific's attorney. Scientific now claims that the evidence should not have been admitted because it was precluded by Rule 407 of the North Dakota Rules of Evidence concerning measures taken after an incident occurs to prevent a subsequent occurrence. Rule 103 of the North Dakota Rules of Evidence requires an objection on a specific ground when it is not apparent from the context.

■ In this case, the ground alleged was relevancy. Rule 407 was not argued. In *Dobervich v. Cent. Cass Pub. Sch. Dist. No. 17*, 283 N.W.2d 187, 191 (N.D.1979), we referred to *State v. Haakenson*, 213 N.W.2d 394, 399 (N.D.1973) and said:

"[T]he touchstones for an effective appeal on any proper issue should be that the matter has been appropriately raised in the trial court so that the trial court can intelligently rule on it, and that there be a valid appeal from the judgment."

Scientific failed to object at the trial on the ground it now asserts for the first time on appeal. As the evidence did not affect a substantial right but was merely cumulative, it was not prejudicial error to receive it. Rule 103(a), N.D.R.Ev.[4]

## IV. MITIGATION

■ Scientific also contends that Delkamp failed to mitigate damages when he entered into the Pfiefer contract on October 30, 1978. As Delkamp entered into this

---

4. "(a) *Effect of erroneous ruling.* Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

 (1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific

ground was not apparent from the context; or

 (2) *Offer of proof.* In case the rule is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Rule 103(a), N.D.R.Ev.

contract on October 30, 1978, it was not a failure to mitigate when he decided to quit applying Spraylock in the middle of November, 1978. His decision to quit applying Spraylock was subsequent to his commitment to Pfiefer. Therefore, this contract was properly considered by the jury in awarding damages.

## V. SUFFICIENCY OF EVIDENCE

Scientific's final assertion is that the evidence did not clearly support the award of damages. Our review of the facts is limited to a consideration of whether or not there is substantial evidence to sustain the verdict. *Everson v. Partners Life Ins. Co.*, 268 N.W.2d 794, 797 (N.D.1978).

The evidence indicates, as the trial court found, that Delkamp had the following items as damages:

| | | |
|---|---|---|
| (1) Funds expended for Equipment, | | $ 5,787.54 |
| (2) Direct Costs (advertising, salaries, supplies), | | 42,046.00 |
| (3) Allocation of Increased Overhead, | | 10,725.00 |
| (4) Amounts not paid on contract prices: | | |
| Doll | $ 1,930 | |
| Schadler | 2,600 | |
| Peavey | 4,635 | |
| Pfeifer | 3,892 | |
| Gimbel | 6,000 | |
| | $19,057 | |
| 30% x 19,057 = | | 5,717.10 |
| TOTAL | | $ 64,275.64 |

The jury returned a verdict for Delkamp of $105,835. Delkamp testified that he figured a 30% profit on the contracts. Even if Delkamp were awarded the full price of the contracts, the sum would not equal $105,835. Under these circumstances, the trial court applied Rule 59(b)(5), N.D.R.Civ.P.[5]

A verdict is deemed to have been given under the influence of passion or prejudice when the award is so excessive as to be without support in the evidence. *Cook v. Stenslie*, 251 N.W.2d 393, 396 (N.D.1977). It was not an abuse of discretion for the court to order a remittitur in this case as there is no support for the amount awarded by the jury. *See Welken v. Conley*, 252 N.W.2d 311, 318–19 (N.D.1977) (Cross-appeal was dismissed when this court found that the trial court did not abuse its discretion in ordering remittitur when it appeared that the jury's verdict had been influenced by an improper instruction.)

The trial court agreed with the jury's verdict as to liability, but disagreed as to the amount of the verdict. We agree that there is substantial evidence supporting the jury's verdict of liability on the part of Scientific. Accordingly, it was not an abuse of discretion for the trial court to deny Scientific's motion for a new trial. As the amount of the jury's verdict was not supported by the evidence, it is deemed to have been given under the influence of passion or prejudice. We agree also that the court did not abuse its discretion in reducing the verdict to $64,275.64, consisting of the damages previously listed. Rule 59(b)(5), N.D.R. Civ.P.

The trial court's denial of Scientific's motion for a new trial is affirmed as is the remittitur ordered by the trial court.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.

---

5. *"(b) Causes for New Trial.* The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

\* \* \* \* \* \*

5. Excessive damages appearing to have been given under the influence of passion or prejudice, but when a new trial is asked for on this ground and it appears that the pas-

sion and prejudice affected only the amount of damages allowed and did not influence the findings of the jury on other issues in the case, the trial court, on hearing the motion, and the supreme court, on appeal, shall have power to order a reduction of the verdict in lieu of a new trial, or to order that a new trial be had unless the party in whose favor the verdict was given remits the excess of damages;" Rule 59(b)(5), N.D.R.Civ.P.