**Adam FLECK, Plaintiff and Appellee,**

v.

**JACQUES SEED COMPANY, PRESCOTT, WISCONSIN, Defendant and Appellant.**

**Civ. No. 880197.**

Supreme Court of North Dakota.

Aug. 28, 1989.

Vogel Law Firm, Mandan, for plaintiff and appellee; argued by Colette N. Bruggman.

Weiss, Wright & Paulson, Jamestown, for defendant and appellant; argued by James A. Wright.

MESCHKE, Justice.

Adam Fleck recovered a judgment against Jacques Seed Company (JSC) for fraud in his purchase of seed corn from JSC. JSC appealed. We reverse and remand for a new trial.

During fall 1984, Fleck, a farmer, learned that Joseph Berger, a neighboring farmer, sold seed corn for JSC. Fleck had frequently used JSC seed corn in the past and had been pleased with the results. Fleck ordered various types and amounts of JSC seed corn through Berger, including some sweet corn and 12 bags of small-medium flat seed corn. Because his planter could not properly plant round seeds, Fleck ordered flat seeds.

Berger placed Fleck's order with JSC, along with other orders. When Berger went to the JSC area warehouse to pick up the seed, he was informed that JSC was

out of flat seed and that medium round seed corn of the same variety had been substituted. On the evening of April 29, 1985, Berger delivered the seed corn to Fleck's farm. Fleck was present during the delivery. Berger and his sons unloaded the bags of seed corn and stacked them in one of Fleck's farm buildings. Fleck testified that it was after dark when the delivery was made and that, because of a disability, he did not assist in unloading the seed. Berger did not tell Fleck that the flat seed he ordered had been substituted with round seed. Although tags on the bags of seed stated that the seeds were round, Fleck did not notice them.

On the morning of May 1, 1985, Fleck tested the planter with sweet corn and was satisfied that the planter was working properly. Fleck instructed his son to plant the sweet corn and then to plant the remaining seed corn on a 60–acre field. Fleck then left for a medical appointment. When the round seed was put into the planter, it did not function properly. Only seven bags of seed, out of 17, were planted. When Fleck returned home, his son told him about the small amount of seed corn used to plant the field. The following morning, Fleck examined the planter and discovered that he had received round seed, the wrong kind for his planter.

Fleck contacted JSC, which offered to furnish seed for reseeding the field only if he signed a waiver of damages form. Fleck refused and contacted the county extension agent, who advised him to wait 21 days to replant the field. The field was tilled and on May 21, 1985, it was replanted. In August Fleck discovered that the crop was not setting cobs. According to Fleck, the late seeding, extra tillage, and dry weather had caused the crop to fail.

Fleck sued JSC, claiming that through its seed dealer, Berger, it had expressly warranted to sell and deliver flat seed corn, and that, by delivering round seed corn, JSC had breached that express warranty. After trial, the trial court ruled that JSC was responsible for Berger's actions as its "ostensible agent," that Berger had "knowingly misrepresented" the corn delivered to

Fleck, and that this conduct constituted "a classic case of misrepresentation or fraud...." The court awarded Fleck $11,282 for the loss of the corn crop and for the costs of reseeding, retillage, and new seed. JSC appealed.

JSC argued that the trial court erred in finding that Berger was the ostensible agent of JSC. We disagree.

■ An agency "is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent, who really is not employed by him." NDCC 3–01–03. An ostensible agency exists where the conduct of the supposed agent is consistent with an agency, and where, in a particular transaction, someone is justified in dealing with the supposed agent. *Farmers Union Oil Co. v. Wood*, 301 N.W.2d 129, 134 (N.D.1980). An apparent or ostensible agency "must rest upon conduct or communications of the principal which, reasonably interpreted, causes a third person to believe that the agent has authority to act for and on behalf of the principal." *Johnson v. Production Credit Ass'n of Fargo*, 345 N.W.2d 371, 375 (N.D.1984). When an agency is denied, the one asserting it must establish it by clear and convincing evidence. *Johnson v. Production Credit Ass'n of Fargo, supra*. We will not disturb a trial court's finding of agency unless it is clearly erroneous. *Asleson v. West Branch Land Co.*, 311 N.W.2d 533, 546 (N.D.1981). Agency is a matter of fact.

■ JSC relied heavily on its written dealer contract with Berger. That contract stated that "title and ownership of all Jacques Products shall be transferred to the Dealer when products are delivered to the Dealer. Each Dealer acknowledges that he is an independent contractor and not an employee of Jacques Seed Company." However, the description which JSC and Berger gave to their relationship in their contract does not control their relationship with the purchasing public. *Belgarde v. Rosenau*, 388 N.W.2d 129, 130 (N.D.1986). Other evidence clearly supports the trial court's finding that Berger was an agent of JSC in dealing with Fleck.

Fleck had bought seed corn from JSC for several years before purchasing through Berger, who told him in 1984 that he was a "salesman" for JSC. JSC provided the order forms and delivery receipts, preprinted with its emblem, for use by Berger. After Fleck discovered that the wrong seed had been delivered, he contacted an area supervisor for JSC, who in turn contacted JSC's district sales manager. The district sales manager contacted Fleck and negotiated for a possible adjustment with him. The trial court also relied on JSC's handling of orders from Berger by credit with complete allowance for all returns; its policy of carrying insurance on its products while in the possession of its dealers; and its continued involvement in all adjustments and decisions about the seed corn after delivery to its dealers. We affirm the trial court's finding that Berger was JSC's agent.

JSC argued that the trial court erred in finding it guilty of misrepresentation because Fleck did not plead fraud. JSC contended that Fleck's complaint plead breach of an express warranty as his only ground for recovery and that, therefore, the trial court's ruling of fraud must be reversed. Fleck acknowledged that he did not plead fraud, but contended that fraud was tried by the implied consent of the parties.

NDRCivP 15(b) [1] allows pleadings to be amended at any time to include issues not raised when those issues are tried by the express or implied consent of the parties. Under the rule, a pleading may be amended to change its theory either expressly, by stipulation or motion, or impliedly, by the introduction of evidence which varies the theory of the case and which is not objected to by the opposing party. *See Soby Const., Inc. v. Skjonsby Truck Line,*

275 N.W.2d 336, 340 (N.D.1979), *overruled on other grounds, Shark v. Thompson,* 373 N.W.2d 859, 867 (N.D.1985). Fleck did not move to amend the pleadings at any time, even after judgment, to allege fraud as an alternate theory of recovery. Since JSC did not expressly consent to trial of a fraud claim, we consider whether JSC impliedly consented.

Consent to try an issue outside the pleadings cannot be implied from evidence which is relevant to the pleadings but which also bears on an unpleaded issue. *Soby Const., Inc. v. Skjonsby Truck Line, supra,* pointed this distinction out:

" '[W]hen the evidence that is claimed to show that an issue was tried by consent is relevant to an issue already in the case, as well as to the one that is the subject matter of the amendment, and there was no indication at trial that the party who introduced the evidence was seeking to raise a new issue, the pleadings will not be deemed amended under the first portion of Rule 15(b). *The reasoning behind this view is sound since if evidence is introduced to support basic issues that already have been pleaded, the opposing party may not be conscious of its relevance to issues not raised by the pleadings unless that fact is specifically brought to his attention.'* [Emphasis added.]" 275 N.W.2d at 340–341 [quoting 6 Wright & Miller, Federal Practice and Procedure: Civil § 1493, at pp. 466–467 (1971)].

Consent to try an unpleaded issue cannot be inferred from the lack of objection to evidence on one pleaded.

In this case, fraud or misrepresentation was not mentioned, either in pre-

1. NDRCivP 15(b) says:

"(b) *Amendments to Conform to the Evidence.* When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these

issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of that evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet that evidence."

trial briefs or during the course of the trial, until the court issued its memorandum decision.[2] To support his assertion that fraud was tried by implied consent, Fleck relied upon the following facts: Fleck ordered flat seed corn from Berger; Berger knew he did not deliver flat seed corn to Fleck but did not tell him; and Berger testified that JSC had substituted the round seeds because they were out of the flat variety and that he did not put the seed size on the delivery receipt because he thought it was unimportant.

■ While these facts would permit an inference of an intentional misrepresentation, they were all offered by Fleck on his breach of warranty claim. If JSC had been aware of a claim of fraud, it may have sought more testimony from its witnesses and might have called additional witnesses. *Consolidated Data Terminals v. Applied Digital Data Systems, Inc.,* 708 F.2d 385, 395–397 (9th Cir.1983). Our rules of procedure expect clear notice of a fraud claim. NDRCivP 9(b). The evidence did not clearly notify JSC that Fleck was changing his theory of recovery to fraud. All of the evidence was relevant to and consistent with the breach of express warranty theory

pleaded in Fleck's complaint. Thus, we do not believe that JSC impliedly consented to trial of a different issue. Consequently, the judgment must be reversed.

■ Nevertheless, Fleck argued that the judgment may be upheld for breach of an express warranty. However, the trial court made no findings about express warranty. It is not this court's function to make findings of fact. *Kouba v. Great Plains Pelleting, Inc.,* 372 N.W.2d 884, 887 (N.D.1985). We do not believe that the evidence in this case is so clear that the breach of warranty claim can be decided as a matter of law.

Under NDCC 41–02–30 (UCC 2–313), whether an express warranty has been given is a question of fact. *Scientific Application, Inc. v. Delkamp,* 303 N.W.2d 71, 74 (N.D.1981). Whether an express warranty was made by JSC was disputed and, if one was made, reasonable minds could differ as to the extent of that warranty.

■ JSC also argued that, even if an express warranty was made, it was excluded or modified as allowed by NDCC 41–02–33 (UCC 2–316). Generally, whether a warranty has been excluded or modified is also

---

2. The trial court, after determining that "[t]his is clearly a classic case of misrepresentation or fraud," ruled that "the negligence or lack of the same by Mr. Fleck in failing to discover how the bags were marked is inconsequential. When one knowingly makes a misrepresentation, they cannot be sheltered by the other person's negligence." JSC contended that it was prejudiced by the trial court basing its decision on fraud because, by doing so, the court "insulated itself from the consideration of [Fleck's] possible negligence."

The trial court was technically correct that a claimant's negligence is not a defense to a claim for intentional misrepresentation. *See* Prosser and Keeton on the Law of Torts § 108, at p. 750 (5th ed. 1984). However, it cannot be said that a claimant's conduct is wholly "inconsequential" in such cases. One court has explained:

"Where the issue of fraud involves the element of the right to rely on the alleged fraudfeasor's representation, it is misleading to say the evidence must show fraud *plus* absence of negligence; and it is a misnomer to use the word 'negligence' in this connection, if it is understood as carrying its usual signification, because 'the law of fraud does not exact of the victim that degree of caution which some

other hypothetically prudent person would have used, but only reasonable care in view of *his* situation.' ... [T]his court has gone a long way to protect the foolishly credulous, as consonant with the administration of pure justice; but the courts will not protect those who, with full opportunity to do so, will not protect themselves. And where the means of knowledge are at hand and are equally available to both parties and the subject matter is alike open to their investigation, if one of them does not avail himself of those means and opportunities he will not be heard to say that he was deceived by the other party's misrepresentation, if there be no confidential relationship between the parties and if no fraudulent devices have been practiced upon the one alleged to have been defrauded to induce him to refrain from making an inquiry, or to anesthetize his sense of caution...." *Wood v. Robertson,* 245 S.W.2d 80, 84 (Mo.1952) [citations omitted; emphasis in original].

*See also* Prosser and Keeton on the Law of Torts, *supra,* at p. 750:

"The plaintiff's conduct must not be so utterly unreasonable, in the light of the information apparent to him, that the law may properly say that his loss is his own responsibility."

a question of fact. *Scientific Application, Inc. v. Delkamp, supra.* Both the order form for the seed and the delivery receipt contained the following language:

"NOTE: The Jacques Seed Co. warrants to the extent of the purchase price that the seeds sold are as described on the container, within recognized tolerances. Jacques makes no other warranty, expressed or implied including as to merchantability and fitness for particular purpose. Seller gives no further warranty expressed or implied."

Fleck did not sign the order form, but he did sign the delivery receipt when the seed corn was delivered to his farm. Their effect was not decided by the trial court.

▮ All warranties may properly be excluded, but that exclusion must be part of the bargain between the parties. *Scientific Application, Inc. v. Delkamp, supra.* "Mere notice of limitations of warranty which are not incorporated into the contract and therefore not a basis of the bargain is insufficient to prevent a buyer from seeking recovery for breach of warranty." *Scientific Application, Inc. v. Delkamp, supra,* 303 N.W.2d at 75. Thus, many courts have held that a buyer is not bound by a disclaimer of warranty which he had not agreed upon at the time of sale and which first appeared in an invoice, receipt, or similar note on or after delivery of the goods. *See, e.g., Geo. C. Christopher & Son, Inc. v. Kansas P. & C. Co., Inc.,* 215 Kan. 185, 523 P.2d 709, 716 (1974); *Pfizer Genetics, Inc. v. Williams Management Co.,* 204 Neb. 151, 281 N.W.2d 536, 539 (1979); *Old Albany Estates v. Highland Carpet Mills,* 604 P.2d 849, 853 (Okl.1979); *Hartwig Farms v. Pacific Gamble Robinson,* 28 Wash.App. 539, 625 P.2d 171, 173–174 (1981); 3 R. Anderson, Uniform Commercial Code § 2–316:32 (3d ed. 1983). In this case, different factual inferences are possible as to whether the sale preceded delivery and receipt of the seed corn or whether the delivery receipt containing the exclusion was, in fact, part of the sales agreement and, therefore, part of the bargain between the parties. *See Lecates v. Hertrich Pontiac Buick Co.,* 515 A.2d 163,

170 (Del.Super.1986). That factual inference can only be made by the trial court.

Rather than a remand for additional findings, we conclude that justice will be better served by a remand for a new trial. *See* NDRAppP 35(b); NDRCivP 59(b)(1) and (3); and *Gronneberg v. Gronneberg,* 412 N.W.2d 84, 91 (N.D.1987). Of course, on remand, we do not limit the trial court's discretion to permit amendment of the complaint to plead fraud. *See Consolidated Data Terminals v. Applied Digital Data Systems, Inc., supra;* and *Freitag v. The Strand of Atlantic City,* 205 F.2d 778, 782 (3d Cir.1953). Accordingly, we reverse and remand for a new trial.

ERICKSTAD, C.J., and GIERKE, VANDE WALLE and LEVINE, JJ., concur.