## NATIONAL COACH WORKS OF VIRGINIA

v.

## DETROIT DIESEL CORPORATION, et al.

### No. CIV. CCB-99-362.

United States District Court,
D. Maryland.

Jan. 18, 2001.

Stephen Alfred Bou Law Office, Washington, DC, for Deborah Harriet Dubose, Marvel L. Jackson, Larry D. Hawkins.

Robert G. McGinley, Macleay, Lynch, Gregg & Lynch, P.C., Washington, DC, David C. Numrych Law Office, Washington, DC, for National Coach Works of Virginia.

David C. Numrych Law Office, Washington, DC, for Lancer Ins. Co.

Robert T. Franklin, Franklin & Prokopik, PC, Baltimore, MD, Sue Lawless, Franklin & Prokopik, Baltimore, MD, for Detroit Diesel Co.

David W. Skeen, Wright, Constable and Skeen, Baltimore, MD, for Motor Coach Industries, Inc.

## MEMORANDUM OPINION

BLAKE, District Judge.

On November 16, 1997, an engine fire destroyed a bus that was traveling on Interstate 95 in Maryland. Three passen-

gers who were injured in escaping the bus filed suit in 1999. They have settled their claims. The bus company, National Coach Works of Virginia ["National Coach"], the bus manufacturer, Motor Coach Industries, Inc. ["Motor Coach"], and the engine manufacturer, Detroit Diesel Company ["Detroit Diesel"], dispute the cause of the engine fire that later spread throughout the bus. National Coach, the defendant in the original case and plaintiff in the surviving action ["the plaintiff"], filed counterclaims against Motor Coach and Detroit Diesel [collectively "the defendants"]. National Coach argues that it can recover from Motor Coach under an implied-warranty theory, under two express warranties, for negligence, and under product-liability law. National Coach also argues that it can recover from Detroit Diesel under an implied-warranty theory, under one express warranty, for negligence, and under product-liability law. National Coach seeks $300,000.00 in damages. Motions for summary judgment by both defendants are currently before the Court. National Coach has also filed a Motion to Add Lancer Insurance Company as Real Party in Interest.[1]

## I. Background

The following relevant facts are not in dispute. In 1992, Motor Coach sold a bus to National Coach. Motor Coach had purchased the engine from Detroit Diesel and installed it in the bus before selling it to National Coach. Motor Coach received the engine from Detroit Diesel, fully assembled. The engine rods are inside the engine and cannot be touched without disassembling the engine. During preparation of a bus, Motor Coach does not dismantle the engine in any way. Motor Coach installed the engine, the oil pressure gauge, and the wiring linking the engine to other parts in the body of the bus. Motor Coach also altered the programming of the DEDEC, an electronic control module that

is part of the system of warning lights that warn the driver of problems in the engine. Opp. Ex. 3B at 3; Opp. Ex. 19 at 11. The alterations involved "input[ting] some information for vehicle speed information, to properly operate the cruise control," including programming in the "axle ratios" and "what the customer expects for set limits for his top speed and also his cruise settings, for cruise control." Opp. Ex. 19 at 11. Detroit Diesel programmed the engine for shutting down in case of emergency. Opp. Ex. 19 at 29.

National Coach bought the bus from Motor Coach under a sales agreement dated November 11, 1992 ["the sales agreement"]. Motor Coach's Mem. in Supp. of Mot. Ex. 1. The sales agreement contains a choice-of-law provision specifying that North Dakota law should govern the contract. The sales agreement refers to a warranty covering the bus for 24 months or 200,000 miles, whichever is shorter.

Detroit Diesel warranted the engine in a "Power Protection Plan" ["the engine warranty"], also called a "P–3." Detroit Diesel's warranty was for five years or 500,000 miles. When National Coach bought the bus, the president of National Coach, John Oakman, negotiated the price of the engine warranty directly with Detroit Diesel.

A document styled as the "MCI–Coach Sales Order" ["the sales order"] lists pages of details about the bus, including an item described as "Extended warranty coverage on an Engine (5 years or 500,000 miles— 100% Par[ts] and Labor.)" Motor Coach Mem. in Supp. of Mot. Ex. 3 at 6 (Item S4.9.4.2); *see also* "Sales Order Release No. US935962," Motor Coach Mem. in Supp. of Mot. Ex. 3 at 4 ("add. warr. coverage—eng. pkg. incl. 5 yr. 100% parts & labor except injec"). The sales order was apparently attached to the sales agreement at some point.

---

**1.** The Court will use the abbreviation "Pl.'s Mot." to refer to the Motion to Add Lancer Insurance Company as Real Party in Interest.

All other abbreviations used by the Court refer to pleadings related to the motions for summary judgment.

On delivery in March 1993, the bus was fully operational, and an inspection revealed it to be in good condition. At the time of the accident in 1997 the bus had been driven approximately 332,762 miles over its lifetime. The driver of the bus, Fred Battle, says that he did not see any warning lights or indicators before the engine failure and fire.

The parties dispute the cause of the fire. "[T]he engine threw a rod causing an engine fire," Motor Coach Mem. in Supp. of Mot. at 2, which is known because a nut from a connecting rod bolt was found in the oil pan. Opp. at 2. Detroit Diesel's expert, supported by Motor Coach, argues that "the real cause of the rod being thrown through the engine block was oil deprivation and poor maintenance on the part of" National Coach. Mem. in Supp. of Mot. at 2. National Coach's expert argues that no lubrication problem contributed to the accident, but that instead a nut attaching a connecting rod in the engine was not twisted tightly enough when the engine was manufactured, and that it eventually came off. Opp. Ex. 3A at 3.

Lancer Insurance Company [Lancer Insurance], the company that insured National Coach, paid $215,000.00 to National Coach, after the $50,000.00 deductible, to settle claims related to the fire. Lancer Insurance also paid the $9,000.00 contributed on National Coach's behalf in settling the personal-injury claims of three passengers. After the fire, Lancer Insurance eventually took possession of the bus and sold it for salvage. Opp. Ex. 20.

North Dakota is the state whose law is specified to apply to the sales agreement between National Coach and Motor Coach. An authorized distributorship of Detroit Diesel and the principal place of business of Motor Coach both are located in North Dakota. The principal place of business of National Coach is in Virginia.

## II. Real Party in Interest

National Coach moves for leave to file an Amended Third–Party Complaint adding Lancer Insurance as a real party in interest and making certain other changes to the complaint. At the time the motion was filed in June 2000, neither defendant had decided whether to consent to the motion. Pl.'s Mot. at 2. Seven months later, neither defendant has filed an opposition to the motion. The Court finds that Lancer Insurance is a real party in interest under Federal Rule of Civil Procedure 17(a), and that Federal Rule of Civil Procedure 19(a) requires its participation in the litigation. The motion will be granted.

The summary-judgment pleadings were, obviously, filed before Lancer Insurance became a party, and the addition of Lancer Insurance as a real party in interest has no substantive effect on the analysis resolving them. Accordingly the Court addresses the summary-judgment motions as they were framed. Where a motion is granted as against National Coach, it is granted as against Lancer Insurance, and where it is denied as against National Coach, it is denied as against Lancer Insurance.

## III. Warranty Claims

National Coach seeks damages from Motor Coach and Detroit Diesel under theories of express and implied warranty. The sales agreement between Motor Coach and National Coach provides that the "Agreement to Purchase shall be construed and interpreted in accordance with" North Dakota law. Motor Coach's Mem. in Supp. of Mot. Ex. 1 at ¶ 14. All parties agree that North Dakota law should govern interpretation of the sales agreement.[2]

 Construction of a contract is a question of law, and "if the intent of the parties can be ascertained from the agreement alone, interpretation of the contract

---

**2.** The engine warranty contains no choice of law provision. National Coach has not disputed Detroit Diesel's argument that North Dakota law also applies to the engine warranty, because the engine warranty became part of the sales agreement as an "add on." Detroit Diesel Mot. at 8; Opp. at 3–4.

is a question of law." *Garofalo v. St. Joseph's Hosp.*, 615 N.W.2d 160, 162 (N.D. 2000). If "two good arguments can be made for either of two contrary positions as to the meaning of a term in a document, an ambiguity exists," and the parties' intent becomes a question of fact that may be illuminated by evidence extrinsic to the contract itself. 615 N.W.2d at 162.

■ Motor Coach argues that the express warranty in the sales agreement limits the liability of Motor Coach and bars any implied warranties. The sales agreement reads, "Buyer hereby expressly accepts the warranty below as the sole warranty applicable to the coach(es) ordered hereunder and agrees that such warranty shall be in lieu of all other understandings, representations or warranties, whether express or implied." Detroit Diesel Mot. Ex. 4 at 2 ¶ 13; *see also id.* at ¶¶ 15–16. This language unambiguously excludes implied warranties. National Coach argues that according to North Dakota public policy, such a disclaimer must be negotiated or incorporated or the party being bound must have had notice of its inclusion, and that these requirements were not met.

North Dakota law permits the express limitation of warranties when the limitations are incorporated into the contract and therefore part of the basis of the bargain. *Scientific Application, Inc. v. Delkamp*, 303 N.W.2d 71, 75 (N.D.1981). "While all warranties may properly be excluded, such exclusion must be part of the basis of the bargain between the parties." *Scientific Application*, 303 N.W.2d at 74. The Supreme Court of North Dakota has refused to enforce disclaimers where one party never signed the contract containing the disclaimer, *Scientific Application*, 303 N.W.2d at 75, and where the disclaimer was included in a preprinted guide shipped with the product and received by one party long after the sales contract had been signed. *Constr. Assocs., Inc. v. Fargo Water Equip. Co.*, 446 N.W.2d 237, 241–42 (N.D.1989)(finding a disclaimer procedurally unconscionable). In this case, National Coach negotiated for the coach, and its president signed a contract containing the exclusion in question. The limitation was part of the basis of the bargain and bars any recovery by National Coach from Motor Coach on a theory of implied warranty.

■ Moreover, North Dakota's four-year statute of limitations bars any recovery by National Coach on a theory of implied warranty. N.D. Cent.Code § 41–02–104 (2000). Under North Dakota law, a breach of warranty occurs on tender of the goods, and National Coach's knowledge of the breach is irrelevant.[3] N.D. Cent.Code § 41–02–104(2); *see also JN Exploration & Prod. v. W. Gas Res. Inc.*, 153 F.3d 906, 913–14 (8th Cir.1998)(declining to apply a general discovery rule as it would negate the statute). The fire occurred more than four years after delivery of the bus to National Coach. National Coach responds only that it filed suit in December 1998 for a fire that occurred in November 1997. It cannot avoid summary judgment for both defendants on its implied-warranty claim.

■ The sales agreement includes an express two-year, 200,000–mile warranty on the entire coach, and the sales order mentions an express five-year, 500,000–mile warranty on the engine alone. As a preliminary matter, National Coach cannot recover from Motor Coach under the engine warranty itself, and does not argue that it can so recover. The warranty describes a five-year, 500,000–mile warranty on the engine of the bus, and defines and limits recourse under that warranty. Detroit Diesel Mot. Ex. 5. It is headed "Detroit Diesel Power Protection Plan Agreement Registration," and lists National Coach as the "customer." Motor Coach is

**3.** The North Dakota Supreme Court has refused to consider whether the statute's discovery-rule exception applies unless the issue is presented, *Spieker v. Westgo, Inc.*, 479 N.W.2d 837, 847 n. 10 (N.D.1992), and as National Coach has not argued that the exception applies, I will not consider it.

nowhere mentioned, and nothing on the engine warranty itself suggests that Motor Coach is liable on the engine warranty.

National Coach argues, however, that in the sales order, Motor Coach assumed liability on the engine warranty. The sales order itself is plainly not a contract, but it was apparently attached to the sales agreement. Extrinsic evidence as to the parties' intent in contracting is relevant only if a contract is ambiguous; in this case, it is relevant only if the sales agreement or some other contract to which Motor Coach was a party is ambiguous as to whether Motor Coach extended a five-year, 500,000–mile engine warranty to National Coach. 615 N.W.2d at 162.

The sales agreement itself expressly limits recovery. After describing a two-year, 200,000–mile warranty on the bus in a section headed "MCI Coach Warranty," it says "enforcement of this obligation of seller shall be the sole and exclusive remedy of buyer under this warranty." Motor Coach Mot. Ex. 1 at 2 ¶ 15. It further provides that "this warranty and seller's obligation hereunder is in lieu of all other warranties, express or implied . . . No person is authorized to change or otherwise modify this warranty or assume any other liability on behalf of seller unless such change, modification, or assumption is made in writing and signed by an authorized official of the seller." Motor Coach Mot. Ex. 1 at 2 ¶ 15.

National Coach's theory that Motor Coach extended the engine warranty rests on two descriptions of the engine warranty

in the sales order. Nothing in these abbreviated descriptions of the engine warranty, however, suggests that Motor Coach itself extends the warranty. Nothing in the descriptions explicitly "change[s] or otherwise modif[ies] this [two-year, 200,-000–mile] warranty or assume[s] any other liability on behalf of [Motor Coach] . . . in writing." Motor Coach Mot. Ex. 1 at 2 ¶ 15. I find that the sales agreement, construed with the sales order, is not ambiguous; Motor Coach did not itself extend the engine warranty to National Coach.[4]

Even if I found that the sales agreement was ambiguous, I would not find a genuine dispute of material fact as to whether Motor Coach extended the engine warranty. National Coach argues that any parole evidence related to the parties' intent in the description of the engine warranty in the sales order would raise a genuine dispute of material fact, without citing evidence supporting its own side of that dispute. Opp. at 5–6. However, Motor Coach has presented uncontroverted testimony by Oakman himself that he negotiated the warranty price directly with Detroit Diesel, winning a lower price. Motor Coach Reply Ex. 1 at 40–45. Oakman signed the registration agreement for the engine warranty, a document that is headed "Detroit Diesel Power Protection Plan Registration" and nowhere mentions Motor Coach. Detroit Diesel Mot. Ex. 5. Oakman corresponded with Motor Coach about the warranty in several letters that clearly state it was Detroit Diesel that was offering the additional warranty. Motor Coach Reply Ex. 1; Detroit Diesel Mot. Ex. 3. Oakman

---

4. National Coach argues that whether express or implied warranties have been extended is a question of fact under North Dakota law and must therefore go to the jury. Opp. at 7–8. The North Dakota Supreme Court recently held that because its interpretation is a matter of law, "an unambiguous contract is particularly amenable to summary judgment." *Garofalo*, 615 N.W.2d at 162. In addition, where there is no genuine dispute of material fact, summary judgment is appropriate. Fed. R.Civ.P. 56. The cases cited by National Coach do not support the proposition that summary judgment can never be granted,

even if there is no dispute of material fact on these issues. *Scientific Application*, 303 N.W.2d at 74 (ruling after a trial without addressing any question related to summary judgment); *Haugen v. Ford Motor Co.*, 219 N.W.2d 462 (N.D.1974)(reversing summary judgment and requiring a hearing where the injured party received a warranty statement limiting liability but signed no contract whatsoever except his personal check for the purchase, and where the trial court had no evidence at all as to the formation of a contract before finding that it was not unconscionable).

did state in deposition that his "understanding was that the front of the engine to the back of the engine was covered 100 percent." Opp. Ex. 2 at 39. However, he said so in the context of a discussion of the engine warranty in which he explained that in the event of engine failure he expected the bus to be towed to a Detroit Diesel facility and that Detroit Diesel made such representations to him. Opp. Ex. 2 at 39. National Coach points to no evidence supporting the view that its own president understood Motor Coach to be liable on the engine warranty, Opp. at 5–6, and in the light of the parties' correspondence about the engine warranty I find no genuine dispute of material fact as to their intent on the issue.

 National Coach also argues that exclusion of consequential damages is unconscionable, even in this commercial setting, under North Dakota law. Findings that commercial contracts are unconscionable are generally disfavored. *Construction Assocs.*, 446 N.W.2d at 242; *Ray Farmers Union Elevator Co. v. Weyrauch*, 238 N.W.2d 47, 50 (N.D.1975). Unconscionability may be procedural or substantive. 446 N.W.2d at 241. Although it does not distinguish between these theories of unconscionability, National Coach argues only a procedural theory, claiming both unequal bargaining power, based on its size as opposed to that of the defendants, and "lack of negotiation of the micro fine print limitations of warranties.". Opp. at 8–9. The North Dakota Supreme Court has found a commercial contract's exclusion of consequential damages to be procedurally unconscionable where the exclusion was included in a preprinted guide received by one party well after the sales contract has been signed. *Constr. Assocs.*, 446 N.W.2d at 242. The sales agreement here, however, was signed by both parties and expressly includes the exclusion. Unlike the facts in *Construction Associates*, the facts in this case demonstrate neither "an actual lack of negotiation" nor "elements of unfair surprise." 446 N.W.2d

at 242. The sales agreement's exclusion of consequential damages is not procedurally unconscionable. Nothing bars a grant of summary judgment for Motor Coach on National Coach's express-warranty claim.

Neither is the engine warranty itself procedurally unconscionable. National Coach's arguments supporting unconscionability are framed so broadly that they apply to the engine warranty as well, but are not specific as to what aspect of the engine warranty in particular might be unconscionable. Opp. at 6–9. The price of the engine warranty was specifically negotiated between Detroit Diesel and National Coach, and the registration of the warranty was signed by the president of National Coach. Detroit Diesel Mot. Ex. 5. With respect to both the sales agreement and the engine warranty, this case is distinct from North Dakota case law finding procedural unconscionability in a commercial setting.

 Detroit Diesel's arguments for summary judgment on the warranty claim differ from those of Motor Coach. First, Detroit Diesel argues that National Coach failed to give it timely notification of its intent to pursue recovery, as required under the engine warranty. Detroit Diesel Mot. at 17. Detroit Diesel cites to deposition testimony by its own manager of service operations that its authorized dealer examined the engine and did not submit a warranty claim to it. Detroit Diesel Mot. Ex. 11 at 68–69; Opp. Ex. 21 at 10. National Coach's president said in deposition that he almost immediately informed a Detroit Diesel employee of the claim and his intent to pursue recovery under the warranty. Opp. Ex. 2 at 51–53. That Detroit Diesel employee admits going out to examine the burned bus but does not remember the conversation in the same way. Opp. Ex. 7 at 29–30. The engine warranty reads that "[a]ll eligible failures ... should be reported promptly to the Detroit Diesel Corporation Distributor or authorized Service Dealer from whom this Agreement was purchased or, if more con-

venient, to any other authorized DDC service outlet." The conflicting evidence as to what was said to an employee of Detroit Diesel within days of the fire means that at the least there is a genuine dispute of material fact as to whether Detroit Diesel itself was notified in a timely way of a warranty claim. Further, it is undisputed that an authorized dealer of Detroit Diesel was notified promptly of the failure, as required by the sales agreement. Summary judgment as to the express engine warranty on a theory of failure to notify is accordingly inappropriate.

Detroit Diesel argues that the engine warranty expressly ends if the customer "sells or loses possession of the product."[5] Because National Coach's insurer sold the bus for salvage after the fire, Detroit Diesel argues that National Coach cannot recover under the engine warranty. Detroit Diesel cannot execute on the warranty by repairing or replacing the defective product if the buyer does not have possession of the defective product, it argues. National Coach responds only that Detroit Diesel had a full opportunity to inspect and examine the bus before it was sold for salvage, and that its sale did not unfairly prejudice Detroit Diesel. Opp. at 12. Detroit Diesel argues that it was prejudiced by the sale of the destroyed bus, because its expert saw the burned engine only in a partially disassembled state.

Logically, Detroit Diesel could replace the engine though National Coach no longer has possession of it, and Detroit Diesel does not appear to contend that repair was possible. However, the failure of Detroit Diesel's logical support for the contractual

provision does not necessarily affect the provision's validity. After the fire the engine went to Western Branch Diesel, a distributor of Detroit Diesel. Opp. Ex. 2 at 43, 56–57. In the light of the genuine dispute already found as to when National Coach informed Detroit Diesel of a warranty claim, it is unclear whether Detroit Diesel's authorized distributor had possession of the engine after the claim had been made. If National Coach made a valid claim under the warranty before the engine went for salvage, it may have a right to challenge Detroit Diesel based on lack of payment for that claim, which was made at a time when National Coach was in compliance with the engine warranty.[6] Accordingly a genuine dispute of material fact precludes summary judgment on National Coach's express warranty claim against Detroit Diesel.

### IV. Negligence and Product–Liability Claims

■ Addressing National Coach's negligence and product-liability claims, I apply the choice-of-law principles of Maryland. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Traditionally, in tort actions, Maryland has applied the law of the place where the accident occurred. *Jacobs v. Adams*, 66 Md.App. 779, 505 A.2d 930 (1986). Detroit Diesel argues that the Maryland Court of Appeals would use the approach of the Restatement Second of Conflict of Laws to determine choice of law on the tort issues, and that under that test it would apply the substantive tort law of North Dakota.[7] The cases cited by

---

5. Motor Coach joins Detroit Diesel's arguments about the engine warranty to the extent that it is found liable on the engine warranty. Motor Coach Reply at 3.

6. Moreover, Detroit Diesel reads the termination provision to apply, in a blanket way, even after failures are reported and after Detroit Diesel or its representative has possessed the engine. The interpretation is not consistent with the engine warranty's own provisions for customers to transfer possession of their products either to Detroit Diesel itself or

to its authorized distributors. If I reach extrinsic evidence, nor is it consistent with Detroit Diesel's acknowledged practice of paying for occasional unauthorized repairs for which the customer must have yielded possession to a repair shop unrelated to Detroit Diesel.

7. Motor Coach argues that North Dakota law and Maryland law both preclude recovery in tort for pure economic loss and that they both therefore bar recovery in the case at bar. Motor Coach never explicitly argues which state's law should govern. Motor Coach

Detroit Diesel do not support its argument. In *Hauch v. Connor*, 295 Md. 120, 453 A.2d 1207 (1983), the Maryland Court of Appeals departed from the traditional approach for a workers' compensation question, but emphasized that "[w]ith regard to tort conflicts principles, we reject the position of the Restatement [Second] and adhere to the rule that the substantive tort law of the state where the wrong occurs governs." 295 Md. at 123, 453 A.2d at 1209. *Am. Motorists Ins. Co. v. AR-TRA Group*, 338 Md. 560, 565, 659 A.2d 1295, 1297 (1995), did not apply the law of the place of the contract on a particular contract question. The case was not in tort, however, and the Court of Appeals specified that even in contract, "we need not give any consideration to the intriguing question of whether Maryland's traditional lex loci contractus test should be abandoned." 338 Md. at 565, 659 A.2d at 1297. Likewise, in *Wells v. Liddy*, 186 F.3d 505 (4th Cir.1999), the Fourth Circuit applied Maryland's traditional test in tort law, 186 F.3d at 521, departing from it only on a question of admiralty law. 186 F.3d at 525.

Although lower courts in Maryland have noted that Maryland's traditional choice-of-law approach in tort law is now a minority view, they have followed the traditional rule. *Naughton v. Bankier*, 114 Md.App. 641, 649 & n. 6, 691 A.2d 712, 716 & n. 6 (1997); *Black v. Leatherwood Motor Coach Corp.*, 92 Md.App. 27, 37–38 & n. 6, 606 A.2d 295, 300 & n. 6 (1992). The Court of Appeals itself, as recently as 1998, discussed the traditional rule in passing without any hint of changing it. *Powell v. Erb*, 349 Md. 791, 795, 709 A.2d 1294, 1297 (1998). I refuse to anticipate a significant reversal of state law, and will follow Maryland's rule for choice of law for the tort claims, applying the law of the state where the accident occurred: Maryland.[8]

As both defendants note, National Coach concedes that it cannot recover from the manufacturer for economic loss: the value of the defective product itself. Motor Coach Reply at 6; Detroit Diesel Reply at 4. National Coach points out that its suit includes recovery for the funds paid to settle the personal-injury claims of passengers, but does not clearly argue that either the presence of the personal-injury claims, even after settlement, or the risk of personal injury preserves its claim for the value of the destroyed product. Arguing that it "seek[s] more than mere economic loss damages to the bus," National Coach also argues that "[t]he economic loss doctrine is not applicable to the personal injury tort claims," implicitly conceding that the doctrine does apply to the claim for the value of the defective product. Opp. at 9. This concession means that National Coach cannot recover in tort from Motor Coach for the bus, nor from Detroit Diesel for the engine. Under Maryland law, in general, a plaintiff may not recover in tort for "the loss of value of the [defective product], or its replacement or repair costs." *A.J. Decoster Co. v. Westinghouse Elec. Corp.*, 333 Md. 245, 252, 634 A.2d 1330, 1333 (1994); *see also IMC Chems., Inc.*, 30 F.Supp.2d 1328 (D.Kan.1998) (applying Maryland law); *Wood Prods. v. CMI Corp.*, 651 F.Supp. 641, 648 (D.Md. 1986). *But cf. Council of Co–Owners Atlantis Condo. v. Whiting–Turner Contracting Co.*, 308 Md. 18, 35, 517 A.2d 336, 345 (1986); *Milton Co. v. Council of Unit Owners of Bentley Place Condo.*, 121 Md. App. 100, 115, 708 A.2d 1047, 1054 (1996);

---

Mem. in Supp. of Mot. at 9, 11. National Coach "agree[s]" that Maryland law should govern in the case at bar without rebutting Detroit Diesel's argument that North Dakota law should apply. Opp. at 3–4.

**8.** Detroit Diesel's suggestion that the original malfunction of the engine might have oc-

curred well before the driver noticed a problem in Maryland and the engine fire took hold is speculative and unsupported by any evidence as to how long the fire would have taken to start. The bus burned in Maryland; Maryland was the place of the accident.

*see also Morris v. Osmose Wood Preserving,* 340 Md. 519, 667 A.2d 624 (1995).

Although the economic loss doctrine bars some recovery sought by National Coach, Maryland law plainly permits recovery for other property damaged by a defective product. *Decoster* permitted recovery for the value of livestock killed by a faulty electrical system. The Supreme Court has cited *Decoster* for the principle that a ban on recovery for a defective product itself does not extend to other property damaged through the defect. *Saratoga Fishing Co. v. J.M. Martinac & Co.,* 520 U.S. 875, 880, 117 S.Ct. 1783, 138 L.Ed.2d 76 (1997); *see also 2–J Corp. v. Tice,* 126 F.3d 539, 544 (3d Cir.1997)(citing *Decoster* in finding that Pennsylvania would not apply the economic-loss doctrine to loss of other though associated property even on the theory that the loss of associated property was foreseeable). Detroit Diesel manufactured and sold the engine; with respect to it, the loss of the coach was a loss of "other property" and may be recovered under Maryland law. Motor Coach manufactured and sold the bus. No recovery for "other property" lies against Motor Coach for the bus regardless of whether defects attributable to Motor Coach destroyed it.[9] Detroit Diesel, however, manufactured only the engine. The economic-loss doctrine does not limit National Coach's claim to recover from Detroit Diesel for the damaged coach, though it bars recovery for the engine itself.

Detroit Diesel makes no additional arguments against the negligence and product liability counts against it, which accordingly survive summary judgment. There is plainly a genuine dispute of material fact between the parties' experts as to whether the original problem in the engine is attributable to poor maintenance of the oil in the engine by National Coach or to a manufacturing defect by Detroit Diesel.

Detroit Diesel argues that a settlement between it and National Coach bars National Coach's claims for indemnification and contribution. The settlement memorandum says that "[u]pon resolution of the third party claim, the prevailing party will be reimbursed for its $9,000.00 contribution" to the settlement, in which Detroit Diesel and National Coach each paid $9,000.00 to settle the three injured plaintiffs' claims. Opp. Ex. 14. Because the settlement covers indemnification and contribution for the plaintiffs' claims, and because National Coach faces no other claims related to the accident, National Coach may not pursue contribution and indemnification against Detroit Diesel.

For these reasons, the Court will grant Motor Coach's Motion for Summary Judgment as to all counts. The Court will grant Detroit Diesel's Motion for Summary Judgment as to the claims for indemnification, contribution, and implied warranty, and will deny it as to the claims for negligence, product liability, and express warranty.

---

9. Certain claims for personal property of passengers on the bus have been brought and settled, according to the record. National

Coach does not mention these claims with respect to the economic-loss doctrine or appear to seek recovery for these settlements.