Roger S. **ROHRICH,** Sandra B. Rohrich and Wilbert Rohrich, Plaintiffs and Appellees,

v.

Clarence **ROHRICH;** Oswald R. Miller, dba Miller Insurance Agency; Michael Kramer, dba K & H Electric; United Accounts, Inc. and all other persons unknown claiming any estate or interest in, or lien or encumbrance upon, the property described in the Complaint, Defendants,

and

Helen J. Rohrich, Defendant and Appellant.

Civ. No. 880019.

Supreme Court of North Dakota.

Jan. 9, 1989.

Francis C. Rohrich (argued), Linton, for plaintiffs and appellees.

Lundberg, Nodland, Schulz & Lervick, Bismarck, for defendant and appellant; argued by Irvin B. Nodland.

ERICKSTAD, Chief Justice.

Helen Rohrich has appealed from a summary judgment quieting title to certain real property in Roger, Sandra, and Wilbert Rohrich. We remand for modification of the judgment and, as so modified, we affirm.

Helen and Clarence Rohrich were divorced in 1981. As part of the property settlement Helen quit-claimed to Clarence her interest in certain real property, situated in Emmons County, which was subject to a prior mortgage to the Federal Land Bank. In 1982, Clarence deeded an undivided one-half interest in the land to his brother Roger.

In 1984, Helen obtained a judgment against Clarence in the amount of $20,205. Helen filed the judgment in Emmons County, thereby obtaining a judgment lien against Clarence's interest in the Emmons County property. *See* Section 28–20–13, N.D.C.C. The Federal Land Bank commenced a foreclosure action in 1985. Helen was named as a defendant but was not properly served. Judgment of foreclosure was entered on June 19, 1986, and on July 24, 1986, the Federal Land Bank purchased the property at the sheriff's sale. On July 14, 1987, the Federal Land Bank assigned the sheriff's certificate of sale to Roger.[1]

On May 18, 1987, Helen moved to set aside the judgment in the foreclosure action, alleging that she had not been served or afforded an opportunity to defend. The court ruled that Helen had not been properly served and that the foreclosure proceedings were null and void as to her. On November 18, 1987, an amended judgment was entered, providing in part:

"The above-judgment, as it pertains to defendant Helen J. Rohrich, is in all things null and void and of no force or effect whatsoever as no valid or effective service of process was made upon her at any time in the above matter, and any buyer takes subject to any rights she may have."

While Helen's motion was pending, Roger commenced this quiet title action. Helen answered, asserting that her judgment lien had not been affected by the foreclosure action because she had not been properly served. The court[2] granted Roger's motion for summary judgment, con-

---

1. Roger subsequently deeded the property to Roger, Sandra, and Wilbert Rohrich. For the sake of clarity we will refer to these parties collectively as "Roger."

2. District Judge William F. Hodny presided over the foreclosure action; District Judge Gerald G. Glaser presided over the quiet title action.

cluding that the failure to serve Helen in the foreclosure action did not elevate the priority of her judgment lien and that the only interest she had in the property was a right of redemption. Although noting in its memorandum opinion that Helen had redemption rights, the court crossed out a provision in the order for judgment which would have given Helen one year from the amended foreclosure judgment dated November 18, 1987, to redeem. The quiet title judgment entered on January 8, 1988, quiets title in Roger without mentioning any redemption rights in Helen. Helen appeals.

■ Helen argues that the quiet title action is an impermissible collateral attack upon the amended judgment in the foreclosure action, based upon her assertion that the amended foreclosure judgment established the continued validity of her judgment lien. We do not, however, read the foreclosure judgment as determining the priority or validity of Helen's lien. The foreclosure judgment states only that "any buyer takes subject to any rights she may have." The court did not purport to determine what those rights were. Because Helen was not a party to the proceedings and had not raised any defenses, the court clearly could not have determined the extent of her rights in the property.

Helen cites *Nelson v. Walrod*, 53 N.D. 409, 206 N.W. 218 (1925), *error dismissed and cert. denied*, 273 U.S. 745, 47 S.Ct. 449, 71 L.Ed. 870 (1927), to support her argument that the result in the prior foreclosure judgment bars the subsequent quiet title action. In *Nelson*, Walrod had foreclosed a mortgage. Nelson had been served as a party in the foreclosure action, and the judgment of foreclosure specifically "forever barred" Nelson from asserting any interest in or lien upon the property. Nelson's subsequent attempt to bring a quiet title action was held to be an impermissible collateral attack upon the prior judgment of foreclosure.

*Nelson* is clearly distinguishable from this case. The court in *Nelson* relied heavily upon the fact that Nelson had been made a party to the foreclosure proceedings and

that the judgment specifically decreed that her interest was inferior to Walrod's mortgage. In this case, however, the foreclosure judgment did not determine the extent of Helen's interest in the property or its priority vis-a-vis the Federal Land Bank's mortgage. *Nelson* does not support Helen's position.

■ Helen asserts that, in any event, the effect of the foreclosure judgment is to continue her judgment lien against the property. Helen argues that because the Federal Land Bank's mortgage was extinguished and released in the foreclosure action, her lien now enjoys first priority status.

In effect, Helen asserts that the failure to serve her in the foreclosure action has elevated the status of her lien and has given her more rights than she had before the foreclosure action. Courts in other jurisdictions have rejected similar arguments.

*Buchner v. Gether Trust*, 241 Wis. 148, 5 N.W.2d 806 (1942), is remarkably similar to this case. The mortgagee sought to foreclose its mortgage and named as a party Gether Trust, which had a judgment lien. Gether Trust was not properly served in the foreclosure action. In a subsequent action, Gether Trust asserted that the foreclosure proceedings did not cut off its lien and that, because the foreclosure had extinguished the prior mortgage, Gether Trust's lien was promoted to first priority. *Buchner, supra*, 5 N.W.2d at 807. In rejecting this assertion the Supreme Court of Wisconsin stated:

"The only cases bearing upon the point in this state, and all of the authorities outside of the state so far as we can discover, hold that where a senior mortgage has been foreclosed without making the claimant of a subordinate lien a party, the proceedings are not null and void but leave the holder of the subordinate lien with the same rights that he would have had had he been made party to the foreclosure proceedings. This implies that his rights are not improved, or the rank of his judgment lien advanced. The rights of the subordinate lien claimant duly served with process in the fore-

closure of a senior mortgage are to pay the mortgage or to redeem the property. These rights are unimpaired and unchanged by the defective foreclosure.

\* \* \* \* \* \*

"Except for the dictum in [*Winter v. Knaak*, 236 Wis. 367, 294 N.W. 488 (1940)], we discover no case holding that the rights of the junior claimant are improved or increased by the defect in the foreclosure proceedings. In accordance with quite elementary principles of justice, his position is preserved and equity will not permit that he suffer any disadvantage from the failure to include him as a party. It would be utterly unfair to do more than this.... To transmute Gether Trust's lien into a first lien against this property would be to reward it out of all proportion to any equities possessed by it and to penalize the purchaser upon the foreclosure sale and its successors out of all proportion to the culpability involved in neglecting to make proper service upon Gether Trust." *Buchner, supra,* 5 N.W.2d at 808.

Other cases are in accord. *See Springer Corp. v. Kirkeby–Natus,* 80 N.M. 205, 206, 453 P.2d 376, 379–380 (1969); *Winter v. O'Neill,* 241 Wis. 280, 5 N.W.2d 809, 811–812 (1942); *Wisconsin Finance Corp. v. Garlock,* 140 Wis.2d 506, 410 N.W.2d 649, 652 (Ct.App.1987). *See also* 3 Jones, Mortgages § 1781 (8th ed.1928); Note, *Remedies of Junior Lienors Omitted from Prior Foreclosure,* 88 U.Pa.L.Rev. 994, 995 (1940) ("If such a holding were to result in the elevation of the junior mortgage to the position of a first lien on the land the junior mortgagee would be presented with a windfall through the mere fact of omission, and this, the courts felt, was too great a penalty to be placed upon the senior mortgagee or bona fide purchaser for failure to locate all of the subordinate liens."); and cases collected in Annot., 134 A.L.R. 1490 (1941).

We agree with the result in the foregoing cases. Although Helen is correct in asserting that the foreclosure proceedings did not extinguish her judgment lien, we conclude that the trial court correctly held that the failure to serve her in that action did not elevate the priority of her lien.

■ Helen asserts that there has never been a determination that her lien was junior to the mortgage and that she has never been afforded an opportunity to present defenses. Helen could have asserted any basis for priority of her lien or any other defense in the quiet title action. Helen's argument apparently is that, through the fortuity of the failure to serve her in the foreclosure action, the mere possibility of such a priority or defense now elevates her lien to a superior position. Helen has cited no authority nor provided supportive reasoning for this assertion, and we see no good reason for such a result. If Helen had defenses to raise she should have asserted them in the quiet title action and bolstered them with supporting affidavits opposing the motion for summary judgment. Having failed to do so, her rights are as a junior lienholder, limited to a right to redeem. *See* Section 28–24–01, N.D. C.C.; *Kulm Credit Union v. Harter,* 157 N.W.2d 700, 707 (N.D.1968).

Although correctly determining in its memorandum opinion that Helen, as a junior lienor, had a right to redeem, the court inexplicably lined out a provision in its order for judgment which would have given Helen a one-year redemption period. The judgment quiets title in Roger with no mention of any redemption rights in Helen.

An action to quiet title is an equitable action. *Lindvig v. Lindvig,* 385 N.W.2d 466, 473 n. 11 (N.D.1986); *Ward v. Shipp,* 340 N.W.2d 14, 18 (N.D.1983). We have recognized that " '[e]quity zealously guards the equity of redemption.' " *Robar v. Ellingson,* 301 N.W.2d 653, 663 (N.D.1981) (quoting *Sherwin v. American Loan & Investment Co.,* 42 N.D. 389, 173 N.W. 758, 761 (1919)). Our redemption statutes are remedial in nature, and the policy of the law is to give every encouragement to subsequent lienholders to redeem. *Bank of Steele v. Lang,* 399 N.W.2d 293, 296 (N.D.1987); *Mehlhoff v. Pioneer State Bank,* 124 N.W.2d 401, 407 (N.D.1963) (on petition for rehearing).

Helen has not had a meaningful opportunity to redeem. We therefore conclude that a new period of redemption is necessary to present such an opportunity to Helen. *See Gress v. Kocourek*, 427 N.W.2d 815, 817 (N.D.1988). Accordingly, we remand to the trial court with directions to modify the judgment to provide Helen a one-year redemption period from the date of our mandate. *See* Section 28–24–02, N.D.C.C. (providing for a one year period of redemption).

The judgment, as modified, is affirmed.

VANDE WALLE, LEVINE, MESCHKE and GIERKE, JJ., concur.