1997 ND 2

**Paul P. TORMASCHY and Janie Tormaschy, Plaintiffs and Appellees,**

v.

**Ernest TORMASCHY, Elaine Tormaschy, Defendants and Appellants,**

and

**Community First National Bank and Trust Company of Dickinson, Defendant and Appellee.**

Civil No. 950367.

Supreme Court of North Dakota.

Jan. 16, 1997.

**814**

Eugene F. Buresh of Reichert, Buresh, Herauf & Ficek, PC, Dickinson, for plaintiffs and appellees.

Robert A. Keogh, Keogh Law Office, Dickinson, for defendants and appellants.

John L. Sherman of Mackoff, Kellogg, Kirby & Kloster, PC, Dickinson, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] This appeal is from the trial court's judgment that the plaintiffs, Paul and Janie Tormaschy (Paul and Janie), hold valid legal title over the west one-half of Section 1, Township 139 North, Range 95 West, Stark County, North Dakota, and that defendant/appellee, Community First National Bank of Dickinson, holds a secured mortgage in the property. The defendants, Earnest and Elaine Tormaschy (Ernie and Elaine), allege the trial court erred in these findings, and claim title in their favor. Because the trial court improperly applied the rules necessary to plead waiver, we reverse and remand.

[¶ 2] Since 1959, Ernie and Elaine had complete ownership of Section 1, Township 139 North, Range 95 West, Stark County, North Dakota. In 1979, Ernie and his nephews, Allen and Gary Tormaschy, agreed to begin a hog feeding operation, Green River Feeders, on the western one-half of Section 1. To finance this operation, Ernie and Elaine obtained a mortgage in the amount of $86,000.00 from Production Credit Association (PCA) on the western one-half of Section 1. Ernie and Elaine also provided $46,000.00 of their own funds to the operation. These funds were used to purchase feed bins, farrowing barns, and other necessary equipment. Green River Feeders was located in the northeast corner of the western one-half of Section 1.

[¶ 3] Green River Feeders was not a successful business. By 1982, Gary Tormaschy left the operation and Ernie and Elaine were unable to make payments to PCA. Allen Tormaschy, wishing to continue the operation, sought to refinance the PCA mortgage through the Bank of North Dakota (BND) and the Farmers Home Administration (FHA). However, Allen lacked the necessary capital to secure refinancing and Ernie and Elaine conveyed the western one-half of Section 1 to Allen and his wife, Vicky, so they could receive the refinancing. This transfer was recorded. Allen and Vicky then executed mortgages with BND and FHA on July 22, 1982. These transactions were duly recorded.

[¶ 4] In December, 1982, Ernie and Elaine entered into a written agreement with Allen and Vicky which stated the transfer of the western one-half of Section 1 was not meant to be a conveyance, but rather a transaction made only to provide Allen and Vicky with enough collateral to obtain financing. The document, referred to as the 1982 agreement stated, in relevant part:

"That said deed from the Parties of the First Part [Ernie and Elaine] to the Parties of the Second Part [Allen and Vicky] was for the sole and exclusive purpose of enabling the Parties of the Second Part to obtain financing from the United States Department of Agriculture, Farmers Home Administration, and that the Parties of the Second Part did not and have not paid unto the Parties of the First Part any sums as and for consideration for the deed and that in fact said transfer was without any consideration whatsoever, and that accordingly the Parties of the Second Part are holding title to said premises in trust for the use and benefit of the Parties of the First Part; and

"WHEREAS, The parties do desire to set fourth their agreement and to further clarify and set forth their respective rights, duties and obligations arising out of said transfer of real estate;

"NOW, THEREFORE, It is hereby agreed by and between the parties hereto as follows:

1. The undersigned Parties of the Second Part do hereby acknowledge that they are holding title to said premises in trust only for the use and benefit of Ernest Tormaschy and Elaine Tormaschy and that said property was conveyed to them for the sole and exclusive purpose of enabling them to obtain financing;

2. That the Parties of the Second Part may not sell, transfer, further mortgage or encumber said premises other than said mortgaging that was done on or about the 22nd day of July, 1982, nor permit said premises to become subject to any mortgages, liens, judgments or encumbrances of record; * * *

4. The Parties of the Second Part do hereby give, grant and convey unto the Parties of the First Part, their heirs, successors and assigns, the exclusive option to reacquire said premises upon demand. That if at any time the Parties of the First Part ... do demand a reconveyance of said premises, the Parties of the Second Part do hereby agree to forthwith reconvey the same and to cause to be satisfied any mortgages, liens or encumbrances against said premises...."

[¶ 5] This agreement was duly recorded.

[¶ 6] Green River Feeders' financial situation did not improve and, by 1986, the operation was insolvent. Allen abandoned the operation, selling the remaining livestock and leaving the property. Ernie continued to farm the western one-half of Section 1, and continued to pay taxes on the property. By 1988, Allen and Vicky were materially delinquent on their payments to both BND and FHA. To alleviate these debts, Ernie and Elaine sought the help of Ernie's brother, Paul Tormaschy. Ernie and Elaine, with Paul's help, actively sought financing. When none could be found, Paul and Janie paid BND and were assigned the BND mortgage in 1988. Thus, Paul and Janie became the holders of the first mortgage on the property. Paul obtained the money to make this payment from a loan through defendant/appellee Community First National Bank (Bank) of Dickinson.

[¶ 7] Ernie and Elaine continued to farm and pay the taxes on the property from 1988 through 1991. In 1989, Ernie and Elaine entered into a lease agreement with Paul and Janie for the property with rent of $3,516.00 per year. This rent was paid for the years 1989, 1990, and 1991. Then, in 1992, Allen and Vicky, by a quitclaim deed, conveyed the western one-half of Section 1 to Paul and Janie. This deed was duly recorded.

[¶ 8] The short term loan with Defendant Bank fell due in early 1990 and went unpaid. Paul and Janie claimed Ernie and Elaine, prior to the payment on the BND loan, agreed to pay the mortgage Paul and Janie held within six months to satisfy the debt. After the short term loan went unpaid, the Bank, seeking greater security, acquired a mortgage from Paul and Janie on the western one-half of Section 1. The BND mortgage was satisfied and released.

[¶ 9] In 1993, Paul and Janie initiated this action to quiet title in the western one-half of Section 1. Ernie and Elaine counterclaimed to quiet title in their favor. The Bank entered the action as a defendant to Paul and Janie's quiet-title action, claiming a mortgage on the property. Despite the fact waiver had not been plead by either party and was only presented as an issue by the Bank's counsel during closing arguments, the trial court found Ernie and Elaine waived any rights they had under the 1982 agreement when they sought Paul and Janie's help, and therefore had no rights in the property, and dismissed Ernie and Elaine's counterclaim. At no point in the proceeding did either party move to amend the pleadings, pursuant to N.D.R.Civ.P. 15(b), to include waiver.[1] The trial court held Allen and Vicky's quitclaim deed transferred the rights in the property to Paul and Janie. The trial court further determined the Bank had a valid mortgage on the property. Thus, the title was quieted in Paul, with the Bank receiving a mortgage on the property. Ernie and Elaine allege

---

1. The trial court, in its ruling from the bench stated, "[r]egarding the aspect of waiver which I addressed to Mr. Sherman in his comments, it looks to me that there is a problem of waiver and I'm going to order pursuant to Rule 15(b) that the pleadings be considered as amended...."

error on the ground waiver was not specially pled.

## I

[¶ 10] We look first at the procedural aspects of pleading. Under the North Dakota Rules of Civil Procedure, waiver must be specifically pled. N.D.R.Civ.P. Rule 8(c). The rule's purpose is to prevent parties from raising surprise claims and defenses at trial. *Gilbertson v. Gilbertson,* 452 N.W.2d 79, 81 (N.D.1990); *First Nat. Bank of Belfield v. Burich,* 367 N.W.2d 148, 152 (N.D.1985).

[¶ 11] However, Rule 81 of the North Dakota Rules of Civil Procedure excepts several statutory proceedings from these general rules of pleading. Rule 81 is designed to serve the same purpose as Federal Rule 81, but differs completely as to content and construction. N.D.R.Civ.P. 81, Explanatory Note. Rule 81 states: "Special statutory proceedings, whether or not listed in Table A, are excepted from these rules *insofar as they are inconsistent or in conflict with the procedure and practice provided by these rules.*" (emphasis added). Actions for quiet title, N.D.C.C. Ch. 32–17, are included in Rule 81's list of special statutory exceptions.

[¶ 12] There is no provision in N.D.C.C. Ch. 32–17 stating waiver must be specially pled. The only pleading requirements in Chapter 32–17 consist of a complaint, proper joinder of all interested defendants, and a defendant's answer, if necessary. N.D.C.C. §§ 32–17–04 through 06 and §§ 32–17–08 through 09. A plaintiff's reply to defendant's answer is only necessary if the defendant's answer "claims a lien or encumbrance upon the property which, prior to the commencement of the action, was barred by the statutes of limitation, or which shall have been discharged in bankruptcy, or which constitutes only a cloud...." N.D.C.C. § 32–17–09. Arguably, under one interpretation of Rule 81, Paul and Janie did not have to plead waiver, because N.D.C.C. Ch. 32–17 does not require it.

[¶ 13] However, if such an interpretation were applied, it could lead to absurd results and trial by ambush or surprise. The purpose of pleading is to allow for proper notice of issues to be tried and eliminate the element of surprise at trial. *Burich,* 367 N.W.2d at 152. The use of trial by ambush is not an acceptable trial technique. *Federal Reserve Bank of Minneapolis v. Carey–Canada, Inc.,* 123 F.R.D. 603, 606 (D.Minn.1988). If, in quiet-title actions, courts allow trial by surprise, a party could raise any type of claim or defense not listed in the quiet-title statute during the course of the proceeding to which another party would have no notice, but would be required to respond on the spot.

[¶ 14] Rule 81 excepts the special proceeding of Chapter 32–17 from the scope of Rule 8(c) only when there is an inconsistency with the general pleading rules. We can look to the Federal Courts for interpretation of the applicability of the civil rules to excepted proceedings under Rule 81. *See, e.g., Thompson v. Peterson,* 546 N.W.2d 856, 860 (N.D.1996). Federal courts have noted silence is not an inconsistency, for when an excepted statutory proceeding is silent on a certain procedural issue, the general rules of civil procedure become applicable. *See Williams v. Jones,* 11 F.3d 247, 254 (1st Cir.1993) (providing the Federal Rules regarding service of process apply under the Longshoreman and Harbor Workers' Compensation Act, a proceeding excepted under Federal Rule 81, because the act contains no service of process provisions); *Booth v. Hume Publishing, Inc.,* 902 F.2d 925, 931 (11th Cir.1990) (interpreting the federal arbitration act under Federal Rule 81); for a general application, *see, e.g., U.S. v. One 1987 BMW 325,* 985 F.2d 655, 659 (1st Cir.1993) (stating the Federal Civil Rules will be used to "fill gaps" in excepted proceedings, such as the Admiralty rules).

[¶ 15] We will not interpret Rule 81 to remove all principles of due process and equity. A quiet-title action is an equity proceeding. *Green v. Gustafson,* 482 N.W.2d 842, 849 (N.D.1992) (citing *Rohrich v. Rohrich,* 434 N.W.2d 343, 346 (N.D.1989)). A trial of the issue of waiver by surprise does not promote the principles of equity. Just as the Federal Courts have applied the Federal Rules to procedurally assist and fill in the gaps for excepted statutes, so too will we apply the North Dakota Rules of Civil Procedure to proceedings found in Rule 81. Al-

though we have previously held failure to plead fraud in a reply to a counter claim in a quiet-title action prohibited the trial of that issue, *Dixon v. Kaufman*, 79 N.D. 633, 58 N.W.2d 797, 802–3 (1953), that case is distinguishable, in that it involved the issue of fraud, and, more importantly, was decided prior to the state's adoption of the Federal Rules of Civil Procedure. *Cf. State v. Hanson*, 558 N.W.2d 611 (N.D.1996) (it is a function of the Supreme Court to promulgate rules of procedure).

[¶ 16] Thus, we do not interpret Rule 81 as a complete exception to the application of the rules of civil procedure, as they apply to quiet-title actions. We interpret the pleading requirements in Chapter 32–17 in light of the general pleading requirements set forth in the North Dakota Rules of Civil Procedure. This interpretation promotes equitable results. If waiver is to be used as a claim or defense in a quiet-title action, it should be specially pled.[2]

## II

[¶ 17] However, when an issue has not been pled, the pleadings may be amended to allow them to conform with evidence introduced at trial. N.D.R.Civ.P. Rule 15(b). But, this rule does not always permit the trying of an unpled issue raised by evidence introduced at trial. *Fleck v. Jacques Seed Co.*, 445 N.W.2d 649, 652 (N.D.1989). When evidence is introduced to support a specifically pled issue, it cannot be used to raise a new issue, because "the opposing party may not be conscious of its relevance to issues not raised by the pleadings unless that fact is specifically brought to his attention." *Id.* at 652 (quoting 6 Wright & Miller, Federal Practice and Procedure: Civil § 1493, at pp. 466–467 (1971)). Because waiver was not specifically pled, the trial court should determine if the evidence relied upon for the finding of waiver was introduced to support an issue specifically pled and if it was, if Ernie and Elaine were conscious of its relevance to the issue of waiver.

## III

[¶ 18] The trial court found Ernie and Elaine's actions waived their rights under the 1982 agreement, and this finding was used to determine Paul and Janie had legal title to the property. The trial court stated: "[T]he Defendant, Ernest Tormaschy, by his actions, waived any rights he may have had under the Agreement dated December 30, 1982." No motion was made to amend the pleadings. Although this finding might have surprised Ernie and Elaine, if they knowingly engaged in activities they knew would jeopardize their position under the 1982 agreement, they cannot claim lack of notice.

[¶ 19] A finding of waiver is a finding of fact reviewed under the clearly erroneous standard. *Sabot v. Fox*, 272 N.W.2d 280, 281 (N.D.1978). For a waiver to be effective, the waiver must be a voluntary and intentional relinquishment of a known existing advantage, right, privilege, claim, or benefit. *Steckler v. Steckler*, 492 N.W.2d 76, 79 (N.D.1992) (citing *Production Credit Ass'n v. Henderson*, 429 N.W.2d 421, 423 (N.D.1988) and *Gajewski v. Bratcher*, 221 N.W.2d 614, 628 (N.D.1974)). The right, claim, privilege, or benefit must be one the party could have enjoyed, but for the waiver. *Steckler*, 492 N.W.2d at 79. Once the right is waived, the right or privilege is "gone forever and cannot be recalled." *Meyer v. National Fire Ins. Co. of Hartford Conn.*, 67 N.D. 77, 269 N.W. 845, 852 (1936). A waiver cannot be extracted, recalled or expunged. *Steckler*, 492 N.W.2d at 79. A waiver can be made expressly or by conduct. *Beck v. Lind*, 235 N.W.2d 239, 251–52 (N.D.1975). Furthermore, when parties engage in an activity which clearly constitutes a waiver, they cannot later claim they did not know their actions amounted to a voluntary and intentional waiver of their rights, because, "he who consents to an act is not wronged by it." *Id.* at 251 (citing N.D.C.C. § 31–11–05(6)).

[¶ 20] The evidence of whether Ernie and Elaine had notice of a possible waiver is

---

2. Rule 12(b), N.D.R.Civ.P., provides, in part, "[i]f a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, the adverse party may assert at the trial any defense in law or fact to that claim for relief." However, "[t]he significance of this sentence is unclear." 5A Wright & Miller, *Federal Practice and Procedure*, § 1365 (2d ed.1990). In any event, the provision of Rule 12(b) does not excuse the pleading of an affirmative defense in response to a counterclaim.

contradictory. Plaintiff's exhibit Number 19, a operating loan request form from ASCS, shows Ernie as a lease holder on the property and Paul as the owner. This document was prepared by Ernie so he could obtain farm operating loans and was signed by both Paul and Ernie. Furthermore, Allen Tormaschy testified he was able to quitclaim the property to Paul and Janie, because "Paul and Ernie were working together at that time," in an effort to remove the BND mortgage from the property. Also, Ernie sought Paul out for his assistance in clearing the title. Lastly, never at any point, did Ernie and Elaine move to enforce their rights under the 1982 agreement, despite their knowledge of Allen and Vicky's quitclaim deed to Paul and Janie. This evidence appears to indicate Ernie and Elaine knew they had relinquished their rights in the property.

[¶ 21] However, Ernie also testified that throughout the dealings with Paul, he always expected he and Elaine would get the land back. Although perhaps based on a naive assumption that he would be entitled to the land free and clear of all encumbrances despite the expenditures on their behalf, this may demonstrate Ernie and Elaine made no intentional and knowing waiver of any rights which they had under the 1982 agreement. This issue was never developed at trial, largely because waiver was never pled as a claim or defense. We will not determine, on this appeal, whether the evidence presented at trial amounted to a waiver.

[¶ 22] In summary, on remand, the trial court should determine if the evidence which it relied upon to support the finding of waiver was introduced to support an issue specifically pled and, if so, whether Ernie and Elaine were conscious of its relevance to the issue of waiver. If Ernie and Elaine were not conscious of a waiver of their rights, the trial court must let Ernie and Elaine respond accordingly, including a new trial, if necessary. Rule 35, N.D.R.App.P.[3]

[¶ 23] We reverse the decision of the trial court and remand for proceedings consistent with this opinion.

[¶ 24] SANDSTROM, NEUMANN, MARING and MESCHKE, JJ., concur.

---

**3.** If, on remand, the trial court determines that the 1982 agreement was intended to, and does, apply to third parties, i.e., other than Ernie and Elaine and Allen and Vicky, and that Ernie and Elaine did not waive their rights, if any, under that agreement, Paul and Janie, by their purchase of the BND mortgage, stand in the shoes of the Bank of North Dakota. Under those circum-

stances, it appears Paul and Janie would hold a valid first lien on the property. Ernie and Elaine would have a right to redeem should that mortgage be foreclosed. Presumably, the trial court believed the mortgage merged into the title transferred from Allen and Vicky to Paul and Janie. *See, e.g., Harvison v. Griffin*, 32 N.D. 188, 155 N.W. 655, 656 (1915).