1999 ND 38

**Greg STUART, Plaintiff and Appellant,**

v.

**Larry STAMMEN and Mary Stammen, Defendants and Appellees.**

v.

**John Clayburgh, Intervenor and Appellee**

**Civil No. 980193**

Supreme Court of North Dakota.

Feb. 25, 1999.

Kip M. Kaler, of Kaler Law Office, Fargo, for plaintiff and appellant.

Patrick R. Morley, of Morley Law Firm, Grand Forks, for defendants and appellees.

Steven L. Latham, of Wheeler Wolf, Bismarck, for intervenor and appellee.

SANDSTROM, Justice.

[¶ 1] Greg Stuart appealed from a judgment dismissing his action for specific performance of a contract right of first refusal to purchase real estate owned by Larry and Mary Stammen. We reverse and remand, holding Stuart neither waived nor failed to timely exercise his contractual right of first refusal.

I

[¶ 2] On May 18, 1997, Greg Stuart entered a written agreement to purchase Larry and Mary Stammen's rural farmstead, including 43.1 acres of land, for $71,000, with a closing date of June 2, 1997. The Stammens attempted to purchase a new home in Grand Forks, but were unable to obtain financing because of their outstanding debts. Consequently, Stuart and the Stammens executed a Cancellation of Purchase Agreement on May 28, 1997, canceling Stuart's purchase agreement. The cancellation contract gave Stuart a right of first refusal to purchase the Stammens' real property, if, within six months, they decided to sell it.

[¶ 3] On May 31, 1997, Larry Stammen met with Stuart at a lounge in Mayville. He told Stuart a third party, John Clayburgh, was interested in purchasing the farmstead, and some personal property, for a price of $140,000. Stuart said he was not willing to pay that much for the property and if Stammen could get that price he should "go for it."

[¶ 4] On June 6, 1997, Stammen sold the property to Clayburgh for $117,500. The purchase contract designated a price of $75,000 for the real estate and $42,500 for the personal property. Stuart learned about the sale from a friend, and he talked to Larry Stammen about it on June 14, 1997. During their conversation, Stammen offered to sell Stuart the real and personal property together for the $117,500 price Clayburgh had offered to pay for it. Stuart refused that offer, stating he was not interested in the personal property. Stuart then sued the Stammens for specific performance of his contractual right of first refusal, offering to pay $75,000 for the real property.

[¶ 5] After a hearing, the district court found Stuart had waived the right of first refusal during his conversation with Larry Stammen on May 31, 1997. The court also found, in the alternative, Stuart failed to exercise the right of first refusal within a reasonable time after learning of the purchase agreement between the Stammens and Clayburgh. Judgment was entered dismissing Stuart's action for specific performance, and Stuart appealed.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. Stuart's appeal was timely filed under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01.

II

[¶ 7] On appeal, Stuart claims the trial court erred in finding he waived the right of first refusal to purchase the Stammens' property. A finding of waiver is a finding of fact reviewed under the clearly erroneous standard. *Tormaschy v. Tormaschy*, 1997 ND 2, ¶ 19, 559 N.W.2d 813.

[¶ 8] The right of first refusal under the Stammen and Stuart contract provides:

In light of the cancellation of the said May 18, 1997 Purchase Agreement, Larry Stammen and Mary Stammen grant to Greg Stuart a right of first refusal for a period of six months from May 27, 1997, for the property described in the attached Purchase Agreement. In the event that Larry Stammen and Mary Stammen re-

ceive a bona fide offer of purchase for the real estate described in the attached Purchase Agreement in the next 6 months commencing May 27, 1997, and should the offer of purchase be satisfactory to the extent it will allow Larry Stammen and Mary Stammen to proceed with the purchase of a home in Grand Forks, Greg Stuart shall have the right to purchase the real estate described in the attached Purchase Agreement on the price and other terms of the offer made to the Stammens during the 6 month period commencing May 27, 1997. If the Stammens receive a suitable offer, they shall contact Greg Stuart and Mr. Stuart shall have seven (7) days within which to sign a contract to purchase the real estate described in the attached Purchase Agreement on the same terms and conditions of the new offer made to the Stammens. A failure of Greg Stuart to execute a Purchase Agreement within the required seven days or the failure of the Stammens to receive an acceptable offer of purchase for their real estate within the six month period from and after the date of this agreement shall cause said right of first refusal to be null and void.

[¶ 9] After the Stammens and Stuart had executed the right of first refusal, Clayburgh approached Stammen about purchasing the property. There is some confusion about the content of Larry Stammen and Stuart's conversation at the lounge in Mayville on May 31, 1997. The trial court, in its memorandum opinion, made the following relevant findings about that meeting:

On May 31, 1997, Larry Stammen had arranged a meeting with Greg Stuart at a tavern in Mayville, North Dakota, the Top Hat Lounge. The purpose of the meeting was to discuss Stammens' negotiations with Dr. Clayburgh. It is undisputed that both parties were drinking during the conversation. A serious dispute exists over the contents of the conversation; however, it is undisputed that at some point Mr. Stuart told Mr. Stammen to "Go for it." Stuart claims that Stammen told him that he had been talking to Dr. Clayburgh and that the Stammens and Clayburgh were close to finalizing a deal whereunder Clayburgh would pay the sum of $140,000 for both the real estate and personalty. Stuart testified he told Stammen "I don't believe that anyone will pay you $140,000 for that property. If he's going to pay you $140,000 by next week—Go for it." Stammen testified that he understood Stuart to be saying if you can make a deal for both the real estate and the personal property go ahead and make the deal. Stuart testified that all he told Stammen was that IF he could sell the property as an entirety for $140,000 cash by next week go ahead and make the deal because he wouldn't match it. Stuart is adamant that he gave no consent to any sale other than for a $140,000 cash deal. The Court finds that given the circumstances of the conversation and the words conveyed to Stammen, when Stuart said "go for it" a reasonable person in Stammen's position would have interpreted the words as a waiver of the right of first refusal if Stammen could reach an agreement to sell the property in its entirety to Clayburgh for a sum sufficient to meet the Stammens' need for cash to close the deal in Grand Forks.

[¶ 10] Stuart had a contractual right to purchase the Stammens' real property if they decided to sell within six months. There was no requirement or obligation by Stuart under the right of first refusal to purchase the Stammens' personal property. Stuart testified Larry Stammen told him during negotiations he could probably sell the personal property separately by auction or other means. Stuart also testified he was certain the Stammens' personal property did not have a value in excess of $20,000 and, therefore, even if Clayburgh's offer of $140,000 included both real and personal property, the amount Clayburgh was willing to pay for the real property was well in excess of the $71,000 Stuart had originally agreed to pay for it. In view of that substantially higher price being offered by Clayburgh, Stuart was not interested in purchasing the property, and he told Stammen if Clayburgh would pay that much he should sell the property to him.

[¶ 11] Consistent with Stuart's testimony, Stammen testified he told Stuart that Clayburgh was willing to pay "in the neighborhood of $140,000" for both the real and per-

sonal property. Nevertheless, the Stammens ultimately sold the property to Clayburgh for only $117,500, designating $75,000 toward the real property and $42,500 for the personal property.

[¶ 12] To be effective, a waiver must be a voluntary and intentional relinquishment of a known existing advantage, right, privilege, claim, or benefit. *Tormaschy*, 1997 ND 2, ¶ 19, 559 N.W.2d 813. The importance of the rights involved and the bargaining position of the parties often fashion the specific requirements for a valid waiver in a particular case. *See, e.g., Brunsoman v. Scarlett*, 465 N.W.2d 162, 168 (N.D. 1991). In a commercial context, this Court has generally required a high degree of specificity for upholding waivers. For example, this Court has held waiver of statutory rights by sureties must be "specific, clear, and unambiguous." *J.R. Watkins Co. v. Vangen*, 116 N.W.2d 641, 650 (N.D.1962). A guarantor's waiver of rights regarding impairment of collateral can only occur with "the most unequivocal language in the guaranty." *General Electric Credit Corp. of Tennessee v. Larson*, 387 N.W.2d 734, 736 (N.D.1986).

[¶ 13] Stuart's option involves the right to purchase real property, and is sufficiently important its waiver must be specific, clear, and unambiguous. Under the circumstances, there is no specific, clear, and unambiguous evidence to support a finding Stuart voluntarily and intentionally relinquished his right to purchase the Stammen property at any price. Neither Stuart's conduct nor his words constituted a specific, clear, and unambiguous waiver of the purchase option. Stuart concedes he told Stammen he was not interested in exercising his right to purchase the property at a price of $140,000. He told Stammen to sell the property to Clayburgh if he could get $140,000 for it. But, Stuart's refusal to exercise the option at a price of $140,000 cannot reasonably be interpreted to constitute a waiver of his right to purchase the property if the Stammens decided to sell it for less.

[¶ 14] Clayburgh paid only $75,000 for the Stammens' real property. There is no testimony or other record evidence the Stammens could not have separately sold the per-

sonal property to someone else, nor is there any evidence they attempted to do so. Stammen never approached Stuart to determine if he would be interested in exercising his option to purchase the real property for $75,000.

[¶ 15] Stuart and Stammen discussed the Clayburgh purchase on June 14, 1997. During that discussion, Stammen only offered Stuart the opportunity to buy both the real and personal property as a package deal for $117,500. Stuart reiterated he was interested only in the real property, on which he had a right of first refusal and for which he was willing to pay $75,000, but not $117,500.

[¶ 16] When a party has a right of first refusal on specified property, the seller cannot add additional property and make it part of the package, thereby forcing the option holder to purchase the additional property to exercise the option. *Berry–Iverson Co. of North Dakota, Inc. v. Johnson*, 242 N.W.2d 126, 134 (N.D.1976); *see also Landa v. Century 21 Simmons & Co., Inc.*, 237 Va. 374, 377 S.E.2d 416, 421 (1989) (the holder of a right of first refusal cannot be compelled to purchase more property than is subject to the right of first refusal or else forfeit the first refusal right). In *Berry–Iverson*, a farm tenant had a right of first refusal to purchase a four-acre tract of land being farmed by the tenant. The landowners attempted to sell a 390.43–acre parcel of land, which included the four-acre tract, to another party, without giving the tenant an opportunity to purchase the four-acre tract. This Court held the owners breached the tenant's preferential right to purchase the leased premises by attempting to sell the leased land as part of a larger parcel, without first giving the tenant an opportunity to buy the four-acre tract. *Berry–Iverson*, 242 N.W.2d at 134. The facts in this case are analogous. Stuart had a right of first refusal to purchase the Stammens' real property. The Stammens attempted to sell the real property together with some personal property, without giving Stuart an opportunity to buy the real property. Under these circumstances, we conclude the trial court's finding Stuart

waived his right of first refusal to purchase the property is clearly erroneous.

## III

[¶ 17] The trial court found, in the alternative, Stuart failed to timely exercise the right of first refusal. Under the terms of the first refusal, the Stammens, upon receiving "a suitable offer" were required to "contact Greg Stuart and Mr. Stuart shall have seven (7) days within which to sign a contract to purchase the real estate described in the attached Purchase Agreement on the same terms and conditions of the new offer made to the Stammens." The Stammens never approached Stuart with an offer to sell the real estate to him for the $75,000 purchase price Clayburgh was willing to pay for it. Under the clear terms of the agreement, the seven days within which Stuart had to exercise his right of first refusal did not commence until the Stammens contacted Stuart with the offer. Consequently, the seven-day period for Stuart to exercise the option was never triggered. The trial court's finding Stuart failed to timely exercise the option was, therefore, clearly erroneous.

## IV

[¶ 18] Under N.D.C.C. § 32–04–16, an obligation regarding real property may be enforced against a subsequent purchaser, except a purchaser in good faith for value. *GeoStar Corp. v. Parkway Petroleum, Inc.*, 495 N.W.2d 61, 67 (N.D.1993). Clayburgh argues Stuart's option to purchase the property cannot be specifically enforced against him, because Clayburgh is protected as a "purchaser . . . in good faith" under N.D.C.C. § 32–04–16.

[¶ 19] The trial court specifically found Stammen contacted Clayburgh, on May 28 or 29, 1997, and informed him the property was available for sale "subject to the Stuart Right of First Refusal." Clayburgh was, therefore, on notice his right to purchase the Stammens' property was subject to Stuart's preferential right to purchase it. Yet, Clayburgh concedes he made no attempt to inquire whether Stuart was in-

terested in purchasing the property at the price Clayburgh was willing to pay for it. A purchaser who has actual notice of facts or circumstances which would put a prudent person upon inquiry is deemed to have constructive notice of those facts which such inquiry in all probability would have disclosed had it been properly pursued. *Hunt Trust Estate v. Kiker*, 269 N.W.2d 377, 380 (N.D.1978). *See also* N.D.C.C. § 1–01–25; *Diocese of Bismarck Trust v. Ramada, Inc.*, 553 N.W.2d 760, 768 (N.D.1996). Clayburgh knew about Stuart's right of first refusal and made no inquiry of Stuart whether he wanted to exercise the right under the terms of the agreement reached between the Stammens and Clayburgh. We conclude, as a matter of law, Clayburgh cannot claim the status of a good faith purchaser.

## V

[¶ 20] When an owner has breached an option holder's right of first refusal to purchase property, specific performance is an available remedy to compel the conveyance of the premises to the option holder. *See Berry–Iverson*, 242 N.W.2d 126, 134. The contract between the Stammens and Clayburgh set a purchase price for the real estate of $75,000. Under the right of first refusal contract, Stuart was entitled to purchase the property at that price. Accordingly, we reverse the judgment and remand for entry of judgment giving Stuart seven days to exercise his right to purchase the Stammen property for $75,000.

[¶ 21] VANDE WALLE, C.J., KAPSNER and MARING, JJ., and EVERETT NELS OLSON, D.J., concur.

[¶ 22] EVERETT NELS OLSON, District Judge, sitting in place of NEUMANN, J., disqualified.