1999 ND 131

**Paul P. TORMASCHY and Janie Tormaschy, Plaintiffs and Appellees,**

v.

**Ernest TORMASCHY, Elaine Tormaschy, Defendants and Appellants,**

and

**Community First National Bank and Trust Company of Dickinson, Defendant and Appellee.**

**No. 990002.**

Supreme Court of North Dakota.

July 13, 1999.

Rehearing Denied Aug. 25, 1999.

Robert A. Keogh of Keogh Law Office, Dickinson, for defendants and appellants.

Eugene F. Buresh of Ficek & Buresh, P.C., Dickinson, for plaintiffs and appellees.

John L. Sherman of Mackoff, Kellogg, Kirby & Kloster, P.C., Dickinson, for defendant and appellee; submitted on brief.

NEUMANN, Justice.

[¶ 1] Ernest and Elaine Tormaschy appeal the district court's judgment entered on remand. We affirm.

I

[¶ 2] This is the second time this case has been before us. The material facts concerning this second appeal are the same as outlined in *Tormaschy v. Tormaschy*, 1997 ND 2, 559 N.W.2d 813.

[¶ 3] Since 1959, Ernest and Elaine have had sole ownership of Section 1, Township 139 North, Range 95 West, Stark County, North Dakota. In 1979, Ernest and Elaine and their nephews, Allen and Gary Tormaschy, started a hog feeding operation, Green River Feeders, on the western one-half of Section 1. To finance the operation, Ernest and Elaine obtained a mortgage of $86,000 from Production Credit Association (PCA) on the western one-half of Section 1. Ernest and Elaine also provided $46,000 of their own money to the operation. The parties used the funds to purchase feed bins, farrowing barns, and other equipment.

[¶ 4] Green River Feeders was not successful. By 1982, Gary Tormaschy had left the operation and Ernest and Elaine were unable to make payments to PCA. Allen Tormaschy sought refinancing from the Bank of North Dakota (BND) and the Farmers Home Administration (FmHA). Because Allen lacked the necessary capital to secure refinancing, Ernest and Elaine

conveyed the western one-half of Section 1 to Allen and his wife, Vicky. This transfer was recorded. Allen and Vicky then executed mortgages with BND and FmHA on July 22, 1982. These transactions were also recorded.

[¶ 5] In December 1982, Ernest and Elaine entered a written agreement with Allen and Vicky which stated the transfer of the western one-half of Section 1 was not intended to be a conveyance, but rather a transaction made only to provide Allen and Vicky with enough collateral to obtain financing. The 1982 agreement provided, in relevant part:

That said deed from the Parties of the First Part [Ernest and Elaine] to the Parties of the Second Part [Allen and Vicky] was for the sole and exclusive purpose of enabling the Parties of the Second Part to obtain financing from the United States Department of Agriculture, Farmers Home Administration, and that the Parties of the Second Part did not and have not paid unto the Parties of the First Part any sums as and for consideration for the deed and that in fact said transfer was without any consideration whatsoever, and that accordingly the Parties of the Second Part are holding title to said premises in trust for the use and benefit of the Parties of the First Part; and

WHEREAS, The parties do desire to set forth their agreement and to further clarify and set forth their respective rights, duties and obligations arising out of said transfer of real estate;

NOW, THEREFORE, It is hereby agreed by and between the parties hereto as follows:

1. The undersigned Parties of the Second Part do hereby acknowledge that they are holding title to said premises in trust only for the use and benefit of Ernest Tormaschy and Elaine Tormaschy and that said property was conveyed to them for the sole and exclusive purpose of enabling them to obtain financing;

2. That the Parties of the Second Part may not sell, transfer, further mortgage or encumber said premises other than said mortgaging that was done on or about the 22nd day of July, 1982, nor permit said premises to become subject to any mortgages, liens, judgments or encumbrances of record;

\* \* \* \*

4. The Parties of the Second Part do hereby give, grant and convey unto the Parties of the First Part, their heirs, successors and assigns, the exclusive option to reacquire said premises upon demand. That if at any time the Parties of the First Part ... do demand a reconveyance of said premises, the Parties of the Second Part do hereby agree to forthwith reconvey the same and to cause to be satisfied any mortgages, liens or encumbrances against said premises....

This agreement was recorded.

[¶ 6] Green River Feeders continued to experience financial difficulty. By 1986, the operation was insolvent. Allen abandoned the operation, selling the remaining livestock and leaving the property. Ernest continued to farm the western one-half of Section 1 and continued to pay taxes on the property. By 1988, Allen and Vicky were materially delinquent on their payments to both BND and FmHA. To alleviate these debts, Ernest and Elaine sought financial assistance from Ernest's brother, Paul Tormaschy. Ernest and Elaine, with Paul's assistance, actively sought financing. When none could be secured, Paul and his wife, Janie, paid BND and were assigned the BND mortgage in 1988. Thus, Paul and Janie became the holders of the first mortgage on the property. Paul obtained the money to make the payment from a loan through the Community First National Bank of Dickinson.

[¶ 7] Ernest and Elaine continued to farm and pay the taxes on the property from 1988 through 1991. In 1989, Ernest

and Elaine entered into a lease agreement with Paul and Janie for the property and paid rent of $3,516 per year for the years 1989, 1990, and 1991. In 1989, Allen and Vicky, by a quitclaim deed, conveyed the western one-half of Section 1 to Paul and Janie. This deed was recorded.

[¶ 8] The short-term loan with the Community First National Bank fell due in early 1990 and went unpaid. Paul and Janie claimed Ernest and Elaine had agreed to pay that mortgage within six months to satisfy the debt before making payment on the BND loan. After the short-term loan went unpaid, the Community First National Bank, seeking greater security, acquired a mortgage from Paul and Janie on the western one-half of Section 1. The BND mortgage was then mistakenly satisfied and released.

[¶ 9] In 1993, Paul and Janie instituted an action to quiet title in the western one-half of Section 1. Ernest and Elaine counterclaimed seeking the same. The district court quieted title in favor of Paul and Janie, finding Ernest and Elaine had waived their rights under the 1982 agreement. On appeal, we reversed and remanded holding waiver had not been properly pled as a claim or defense. We directed the district court to consider if the evidence of waiver had been introduced to support an issue specifically pled and if Ernest and Elaine were conscious of the relevance to the issue of waiver. *Tormaschy*, 1997 ND 2, ¶ 22, 559 N.W.2d 813. This Court instructed the district court that if Ernest and Elaine were not conscious of the relevance then they must be allowed to respond, including holding a new trial if necessary. *Id.* at ¶ 22, 559 N.W.2d 813.

[¶ 10] On October 22, 1998, the district court issued a judgment on remand. Under the judgment, the district court concluded Paul and Janie are the owners in fee simple of the western one-half of Section 1; Ernest and Elaine had waived any rights they may have had under the 1982 agreement, and Ernest and Elaine were

not entitled to damages for Paul and Janie's use of the land from 1988 to 1994. Ernest and Elaine appeal from the judgment, arguing many of the district court's findings of fact are clearly erroneous, and the court's conclusions of law relating to waiver, damages, and ownership of the land are incorrect.

## II

[¶ 11] Ernest and Elaine challenge the district court's findings VII, X, XI, XII, XIII, and XIV. The appropriate standard of review for findings of fact from a bench trial is whether the findings of fact are clearly erroneous. *Roise v. Kurtz*, 1998 ND 228, ¶ 6, 587 N.W.2d 573. A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire evidence, we are left with a definite and firm conviction a mistake has been made. *Id.* at ¶ 6, 587 N.W.2d 573. Upon review of the entire record in this case, we hold the challenged findings of fact are not clearly erroneous.

[¶ 12] Ernest and Elaine challenge the district court's finding XV they had waived any rights they may have had under the 1982 agreement. A waiver is a finding of fact reviewed under the clearly erroneous standard. *Tormaschy*, 1997 ND 2, ¶ 19, 559 N.W.2d 813. For a waiver to be effective, it must be a voluntary and intentional relinquishment of a known existing advantage, right, privilege, claim, or benefit. *Id.* at ¶ 19, 559 N.W.2d 813. This advantage, right, privilege, claim, or benefit must be one the party could have enjoyed, but for the waiver. *Id.* at ¶ 19, 559 N.W.2d 813. A waiver cannot be recalled or expunged. *Id.* at ¶ 19, 559 N.W.2d 813. "A waiver can be made expressly or by conduct." *Id.* at ¶ 19, 559 N.W.2d 813. When parties conduct themselves in a manner which clearly constitutes waiver, they cannot later claim they did not know their actions amounted to a voluntary and intentional waiver of their rights, because,

"he who consents to an act is not wronged by it." *Id.* at ¶ 19, 559 N.W.2d 813.

[¶ 13] On remand, the district court found Ernest sought the assistance of Paul and agreed to obtain financing to pay off or purchase the interest Paul obtained in the land. The court found Paul and Janie had relied on representations made by Ernest and Elaine in deciding to assist them in avoiding foreclosure on the land. The court also found Ernest and Elaine had actual knowledge of Paul and Janie's attempts to obtain title from Allen and Vicky Tormaschy and, at no time, did either Ernest or Elaine assert the 1982 agreement as a bar to this activity. Finally, the court found Ernest and Elaine had waived any rights they might have had under the 1982 agreement. Based on a review of the entire record, the district court's findings are not clearly erroneous.

 [¶ 14] Ernest and Elaine argue the district court incorrectly determined they were not entitled to damages for Paul and Janie's possession or use of the land from 1988 to 1994. Ernest and Elaine also argue the property taxes they paid in 1989, 1990, and 1991 should be reimbursed if title is quieted in favor of Paul and Janie.

[¶ 15] At oral argument on appeal, counsel for Ernest and Elaine acknowledged any reimbursement of property taxes would be an equitable issue which would necessarily be balanced with the debt service Paul and Janie paid in the corresponding years. Counsel also conceded he had not introduced evidence which would allow the district court to properly conduct any balancing of the taxes paid with the debt service or determination of whether damages existed. Generally, we will not consider an issue on appeal when it has not been raised and adequately presented to the district court to allow for a proper determination there. *Hansen v. Winkowitsch,* 463 N.W.2d 645, 646 (N.D.1990). As to lost profits, improvements to the property, and rental fees paid on the property, the district court correctly determined Ernest and Elaine are not entitled to those damages.

[¶ 16] Since we are affirming the decision to quiet title in favor of Paul and Janie Tormaschy, we need not address the mistakenly recorded mortgage satisfaction.

### III

[¶ 17] We affirm the district court's judgment on remand quieting title in favor of Paul and Janie Tormaschy.

[¶ 18] VANDE WALLE, C.J., and MARING, KAPSNER and SANDSTROM, JJ., concur.